JOHN H. PADDOCK · *v.* HENRY E. FLETCHER AND OTHERS.

*Fraud.*    *Corporations.*

The plaintiff having been induced to subscribe for a share of the capital stock of a company to be organized under the General Statutes for certain legitimate purposes, by the false and fraudulent conspiracy, acts and representations of the defendants, entered into and made for the purpose of deceiving and cheating the plaintiff, and by which he was deceived and cheated, having exercised such caution and prudence as the law required on his part, and so paid the price of said share to the treasurer of the company when organized, and sustained a loss thereby, is entitled to recover damages for the fraud in an action on the case against those who committed the fraud, whether they converted the money to their own use or not; and whether they carried out their fraudulent scheme after obtaining the money or not.

ACTION ON THE CASE, to recover damage for the fraud of the defendants. General demurrer to the declaration. The court at the December term, 1868, Caledonia county, STEELE, J., presiding, *pro forma*, held the declaration sufficient, and rendered judgment for the plaintiff, to which the defendants excepted.

" The declaration alleged in substance, that November 11, 1865, the defendants were interested in twenty-five acres of Canada oil lands ; that they fraudulently conspired to deceive whomsoever they might be able, by selling ten acres of the said twenty-five at a price greatly above its true value ; to effect which the defendants concocted the scheme of decoying enough other persons to join them in a pretended purchase of the ten acres, at the price of $20,000, to make forty in all ; said forty persons to be organized into a company under chapter 86 of the General Statutes, for the purpose of buying said land (i. e. the ten acres) and engaging in the oil business ; that to more effectually carry out their fraudulent purpose, the defendants drew up subscription papers for the stock of the company, and each of the defendants fraudulently subscribed for one-fortieth of the said stock at $500, thereby pretending to become purchasers of the said ten acres with the other subscribers of said stock, and thereby pretending they were not the sellers of the said land ; that Henry E. Fletcher, in November, 1865, on behalf of the defendants, asked the plaintiff to subscribe for a share of the said stock, saying he had been in the vicinity of the ten acres and had learned how he could get a bond to purchase the same ; that the other defendants

thought it a good investment, and had employed him to obtain such bond, and he had got it, and had advanced $500 toward paying for the ten acres; that the first cost of the ten acres was $20,000; that it was to go into the company at cost; that he was not making anything thereon, but went into the proposed company same as the other members did, and as the plaintiff would if he took a share; that the ten acres were well worth $20,000; that the plaintiff knew nothing about the said ten acres, or the value thereof, and relied upon the defendants' *acts* in subscribing for the stock, and Henry E. Fletcher's representations, and by reason thereof subscribed for a share at $500; that to further carry out their fraudulent purpose the defendants called the subscribers of the said stock together at Newport, December 1, 1865, when and where Henry E. Fletcher fraudulently stated that he had a bond for the said ten acres, but had accidentally left it at home; that the said ten acres were free from incumbrance, and the title good; that the same cost in Canada $20,000, which must be paid in order to get a deed; that he (H. E. F.) was not making a cent, but had put the ten acres in at cost. All these statements the defendants knew were false, but did not contradict them, and silently consented to them as being true; and the plaintiff, relying on these representations, and believing from the defendants acts, as he had a right to do, that the defendants were not interested in the ten acres in any other way than he was, joined with the other stock subscribers in organizing the said company, elected George May treasurer, and the plaintiff paid him the $500, amount of his subscription, and to further deceive the plaintiff each of the defendants did the same. The plaintiff avers that the defendants in subscribing and paying for their shares, and in the statements made by Henry E. Fletcher, acted falsely, and deceived the plaintiff in this: that the defendants were not interested in subscribing and paying for their shares *the same* as the other members; that the defendants were really the owners and sellers of the ten acres; that Henry E. Fletcher never had *such* a bond for the ten acres *as he represented* he obtained, etc.; that the money the defendants paid May on their shares was not appropriated to pay for the ten acres, nor so intended, but was refunded by Henry E. Fletcher soon after; that the money paid by the other subscribers to the stock was not used to pay for the ten acres, nor so intended, but was partly used for another purpose, and the rest has been, or is to be, divided among the defendants; that the ten acres are comparatively worthless, and the title thereto is doubtful, largely incumbered and not taken to the company, nor to its members, but to William S. Hunter; and so the plaintiff was deceived into

subscribing for one-fortieth of the stock of the company, and into aiding in the organization of the same, and was cheated out of his $500."

*Bliss N. Davis*, and *Ray & Ladd*, for the defendants, maintained that the declaration does not show that the alleged conspiracy, if meditated, was ever consummated, as there was no sale of land by the defendants to the plaintiff, or the corporation, which was the alleged object of the conspiracy, hence the plaintiff suffered no legal damage ; that a merely meditated or contemplated fraud is never actionable. *Morgan* v. *Bliss*, 2 Mass., 111 ; *Weeks* v. *Burton*, 7 Vt., 67 ; *Ide* v. *Gray*, 11 Vt., 615 ; *Needham* v. *McAuley*, 13 Vt., 68 ; *Sylvester* v. *Downer*, 18 Vt., 32. The plaintiff's declaration ought to show that the loss of his money was the direct result or consequence of his reliance upon the acts and representations complained of, which does not appear. It was insisted that the declaration was defective in various particulars, and especially that it did not show any wrongful or fraudulent *conversion* of the plaintiff's money, nor indeed any conversion of it by the defendants, and does not state any facts in regard to the disposition of the plaintiff's money which make the defendants liable.

*Jonathan Ross*, and *T. P. Redfield*, for the plaintiff, maintained that the facts constituted a clear case of fraud and deceit accompanied with damage, which is a good cause of action. *Upton* v. *Vail*, 6 Johns., 181 ; *Parsley* v. *Freeman*, 3 T. R., 58 ; *Polhill* v. *Walter*, 23 E. C. L., 59 ; *Foster* v. *Charles*, 19 E. C. L., 183 ; *Carhill* v. *Brown*, 21 E. C. L., 211 ; *Barney* v. *Dewey*, 13 Johns., 224 ; *Fitzsimmons* v. *Joslin*, 21 Vt., 129 ; *Adams* v. *Soule*, 33 Vt., 538.

The opinion of the court was delivered by

WILSON, J. This is an action on the case to recover damage for the fraud of the defendants, and the questions arise upon general demurrer to the declaration. The facts set forth in the declaration, and admitted by the demurrer, show that the defend-

ants, by their false and fraudulent combination and conspiracy, and by their false and fraudulent acts, statements and representations, deceived the plaintiff, and by reason thereof he was induced to subscribe, and did subscribe for a share of the stock of the proposed company, and to join in organizing the company, and thereby he was cheated out of his $500. The fraud complained of was practiced not only by fraudulent acts, misrepresentation and fraudulent concealment, but by fraudulent pretenses, by which the defendants intended to deceive, and did deceive the plaintiff. At that time the plaintiff had no knowledge of the deceit; it was not apparent; he relied and acted upon the acts and statements of the defendants, and no prudence or caution which the law required him to exercise was sufficient to guard him against the fraud. From the acts of the defendants, in subscribing for shares of the stock; from their representations as to the nature, quality, value and price of the land, as to the situation of the title and the arrangements which they stated were being made by them to purchase the land for the proposed company, and from their statements and representations as to the object of the proposed company, and the importance of obtaining the specified number of subscribers, the plaintiff had the right to believe the defendants were not the owners of the land, but that they would purchase it for the proposed company, and let the company have the land at what it cost them; that they had become *bona fide* subscribers for the stock; that they, with others who should subscribe for the stock, were to become *bona fide* members of the proposed company, upon equal terms; that they would in good faith pay their respective shares of the capital stock; and in view of the relation so effected by the defendants, and of the *confidence* and *trust* which such relation imposes, that the defendants, in making the purchase, and in all things relating to the proposed company, had acted and would act in good faith, and for the common and mutual interests of all who had subscribed or should subscribe for said stock. Upon all this the plaintiff relied in subscribing for the stock and paying for the same. But, in fact, the defendants were the *owners* and *sellers* of what they had purchased at a much less rate, and devised these means to effect a sale from themselves to the plaintiff and others, a sale which they

Paddock *v.* Fletcher ot al.

had reason to believe they could not effect by legitimate means. The defendants affected payments, but their money was secretly returned to them, by reason of which the company was destitute of capital. If the defendants had informed the plaintiff that they had bargained for said twenty-five acres of land, that they proposed to engage enough other persons to join them to make up forty in all, to be organized into a company for the purpose of engaging in the oil business, with the understanding that the defendants would sell, and the company, or the proposed members thereof, would purchase of the defendants ten acres of land, at the sum of twenty thousand dollars, no one can reasonably suppose the plaintiff could have been induced to join them without examination of the premises and inquiry in relation thereto himself, or by an agent not in the interest of the seller, nor unless he had become satisfied it would be a good investment. If in this manner the defendants had introduced to the plaintiff the subject of selling said land for the price named, and organizing a company for the purpose above mentioned, the plaintiff would have understood that the relation, between him and the defendants, or between the defendants and the other subscribers for the proposed stock, was not other or different from that which exists between seller and buyer of property, in which the buyer as well as the seller must concur in the terms of sale. But this was not the manner in which the defendants introduced or conducted the business. They concealed from the plaintiff the material facts, and gave the plaintiff to understand they had acted and would act for the mutual interests of all concerned. The relation thus created was one of confidence and trust, but it was intentionally and wantonly violated by the defendants, to the damage of the plaintiff. It is said by the defendants' counsel that the plaintiff suffered no damage on account of the alleged conspiracy, because the defendants' offer to sell the land was never acted upon or accepted, either by the plaintiff or the corporation. This is no defense to the plaintiff's action, for the acts of the defendants were false and fraudulent from the beginning. The plaintiff's subscription for the stock was obtained by the fraud of the defendants, by reason of which he was not liable to pay it. The defendants fraudulently

45

organized the company for the purpose of obtaining payment of the plaintiff's subscription, and the plaintiff paid the same, without knowledge of the fraud. The defendants proceeded far enough in their fraudulent scheme to obtain the plaintiff's money, and their acts and representations would be none the less fraudulent if they had purchased the land. It is urged by the defendants' counsel that the declaration does not show any wrongful or fraudulent *conversion* of the plaintiff's money, or state any facts in regard to the disposition of the money which make the defendants liable, and that he should have proceeded against the alleged corporation or its treasurer. But we think the plaintiff was not bound to proceed for his money against the corporation or treasurer. This action is brought to recover damage for the fraud of the defendants, by which the money was taken from the plaintiff. The defendants, by fraud, took the money from the plaintiff, and they are liable to him whether they put the money into their own pockets or not. The question whether the plaintiff's stock, if he has any, should go in mitigation of the damages is not before us.

The conclusion is that the judgment of the county court is correct. The defendants having moved for liberty to replead, the judgment of the county court is reversed, *pro forma*, and the defendants may replead, on the usual terms as to costs.