Franey vs. Warner and others.

*By the Court.*— Judgment affirmed.

FRANEY, Respondent, vs. WARNER and others, imp., Appellants.

*April 13 — April 30, 1897.*

*Corporations: Stock subscriptions: False representations of promoters: Rescission: Restoring consideration: Accounting for profits: Equity: Practice.*

1. A written instrument by which the signers "subscribe to the amount set opposite of our [their] respective names in a corporation to be formed" for the purchase of certain land at a specified price, is not a contract between the signers to join in buying the land, but is a mere proposal to take stock, not binding on anybody until accepted by the corporation. When so accepted the subscribers become liable to the corporation to pay for stock to the amount set opposite their names respectively, and the contract cannot thereafter be rescinded for any fraud for which the corporation was not liable.

Franey vs. Warner and others.

2. In an action by one of such subscribers against the corporation to which the land had been conveyed and certain other stockholders who had been its promoters, to rescind the contract and recover the amount paid on the stock on the ground that plaintiff's subscription had been obtained by false representations as to the ownership of the land and the purchase price to be paid, a determination by the trial court acquitting the corporation of all wrong and dismissing the action as to it, left the contract of subscription in full force. A judgment, therefore, which in effect rescinded the contract as to the promoters and awarded a recovery from them of the entire amount paid thereon, was erroneous both because the money had been paid to the corporation on the contract of subscription made with it, and because the plaintiff could not restore the defendants to their former position.

3. An assignment to defendants of plaintiff's stock which they had never owned would not so restore them to their former position as to warrant a rescission.

4. If a person in good faith brings an action in equity alleging facts sufficient to constitute a good cause of action within some recognized principle of equity jurisprudence, but fails to establish some fact essential thereto, yet does establish a state of facts entitling him to some relief by way of damages or otherwise, the court will not dismiss the bill and thereby render further litigation necessary, but will retain it and render such judgment as will do complete justice between the parties.

5. Where a person has been induced to subscribe for stock in a corporation to be formed to purchase a certain tract of land by false representations of the promoters that the land was to be purchased of a third person at a certain price, when such promoters had already actually purchased the land at a much less price, he may maintain an action in equity against the promoters for an accounting and a recovery of his proportionate share of the profits retained by them.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

Action to rescind a transaction whereby plaintiff was induced by fraudulent representations made by defendants *Warner, Warner,* and *Wambold* to join with them in the formation of a corporation to purchase certain land for $45,000, said defendants pretending that said land was to be bought of an outside party, who was the owner, and that all who

united in the scheme would share in proportion to their respective subscriptions in the actual cost of the land and the profits of the enterprise, when in fact such defendants had obtained the right to purchase the property for $32,727, and secretly purposed making the difference between that and the selling price to the corporation of $45,000.

The complaint contained allegations to the effect of the foregoing, and that the scheme was consummated by the formation of the corporation, said defendants procuring the transfer of the land to it by an outside party, one Siegert, ostensibly at the purchase price of $45,000, but at an actual cost to·said defendants of $32,727, they dividing the difference between themselves as profits, without the knowledge of plaintiff and others similarly situated.

The action was commenced against the promoters, *Warner*, *Warner*, and *Wambold*, and the corporation as well, and proper allegations made in the complaint to charge the latter as a party to the fraud. The relief prayed for was a rescission of the whole transaction, and a judgment against the defendants for the money paid by plaintiff upon the subscription to the stock of the corporation. The defendants demurred generally to the complaint. The demurrer was stricken out as frivolous, and defendants excepted. Thereafter answers were put in, and the issues thus formed tried and determined by findings and conclusions of law in substance as follows:

(1) That January 1, 1892, defendants *Warner, Warner*, and *Wambold* formed a fraudulent combination to cheat plaintiff and others by selling to a corporation, of which said defendants were promoters, certain lands for $45,000, which they had secretly obtained the right to purchase for $32,727; and that in furtherance of their fraudulent scheme they represented to plaintiff and others, who, with him, were induced to unite in the enterprise, that the cost price of the land was $45,000, when in fact it was $32,727.

(2) That plaintiff, relying upon such representations, and not otherwise, by a $3,000 subscription united with such defendants and others, who in the aggregate made up the entire subscription of $45,000 called for, the subscribers agreeing to take interests in the enterprise of purchasing the land corresponding to their respective subscriptions, such interests to be evidenced by stock in the proposed corporation; and that plaintiff became, by signing the agreement, an actual subscriber to the stock of the corporation to the extent of $3,000.

(3) That after the corporation was organized certificates of stock to the whole amount were issued, and payment made therefor by plaintiff and those similarly situated, as required by the plan of organization, plaintiff paying on his $3,000 of stock, $1,120; that $7,200 of full-paid stock was issued to the said defendants *Warner*, *Warner*, and *Wambold* without any consideration being paid therefor.

(4) That after the corporation was organized the said promoters, pretending that Siegert owned the land, caused themselves to be appointed by the corporation, at a meeting of stockholders, a committee to purchase the same from said Siegert for $45,000, upon the pretense on the part of said defendants, relied upon by plaintiff and others similarly situated, that he owned the land, and that such was his price; that in furtherance of the scheme said defendants caused Siegert to convey the land to the corporation by a deed expressing as the consideration one dollar and other valuable considerations, and represented that the true consideration was $45,000, part cash and part mortgage back on the premises, when in fact it was but $32,727, of which one third was paid down out of the corporation funds paid in by the *bona fide* stockholders, and the balance covered by a mortgage back to Siegert; and that the balance of the funds of the corporation paid in by such *bona fide* stockholders, aggregating in all $23,700, was kept by said defend-

ants *Warner*, *Warner*, and *Wambold* as profits, without the knowledge of plaintiff or others similarly situated.

(5) That before the commencement of this action plaintiff notified defendants that he elected to rescind the contract to purchase the land and to take stock in the corporation, on the ground of fraud, and demanded a return of the $1,120 paid to the corporation, with interest thereon; also a return to plaintiff of his contract of subscription; and that he offered at the same time to turn over to defendants his certificates of stock; and that his demands were refused.

(6) That the corporation, though a proper party, in no way participated in the fraud upon plaintiff, or is responsible therefor.

Upon such facts the court concluded: (1) That *Warner*, *Warner*, and *Wambold* were promoters of the corporation, and its agents in the purchase of the land, and occupied such relation to it that they had no right to make any profit out of the purchase of the land, and that all profits made by them in such purchase were in breach of the trust, and contrary to equity.     (2) That the plaintiff is entitled to judgment rescinding the suscription to the purchase of the land and to the stock of the corporation upon reassigning to the promoters the certificates of stock in the corporation, and depositing the same with the clerk of the court for such promoters; and that plaintiff is entitled to judgment against said defendants *Warner*, *Warner*, and *Wambold* for the money paid to the corporation, $1,120, and interest thereon from the time it was so paid, with costs and disbursements; and that the defendant corporation is entitled to a dismissal of the action as to it, with costs.

Exceptions were duly filed on behalf of defendants *Warner*, *Warner*, and *Wambold*, and they, after rendition of the judgment, appealed therefrom to this court.

*Orren T. Williams*, for the appellants.

For the respondent there was a brief by *N. S. Murphey*,

attorney, and *H. K. Curtis*, of counsel, and oral argument by *Mr. Murphey*.

MARSHALL, J.   It is assigned, first, as error that the court erred in holding that the complaint states a cause of action. This is based on the theory of counsel for appellants that respondent's counsel purposed stating a cause of action to redress a wrong to the corporation, and that necessary allegations are wanting to justify the plaintiff, as a stockholder, in prosecuting such an action, in that there are no allegations to the effect that the corporation or its officers were requested to prosecute for the wrong and that they refused to comply therewith, or that such a request, if made, would have been useless.   That such allegations are requisite to such an action does not admit of question.   *Doud v. W., P. & S. R. Co.* 65 Wis. 108; *Palmer v. Hawes*, 73 Wis. 46; *Eschweiler v. Stowell*, 78 Wis. 316; Pomeroy, Eq. Jur. § 1095. But that principle clearly does not apply to this case.   Appellants' counsel misconceived the character of the action. It was not intended by the complaint to state a cause of action in favor of plaintiff and others similarly situated to redress a wrong to the corporation caused by the fraudulent acts of *Warner, Warner,* and *Wambold,* but to state a purely personal cause of action in equity against them and the corporation, as parties jointly liable for fraudulent representations and conduct, whereby plaintiff was induced to subscribe for $3,000, par value, of the stock of the defendant corporation.   The theory was that the fraudulent scheme was entered into by *Warner, Warner,* and *Wambold,* and was carried out to the knowledge of the officers of the corporation in such a way as to render it a guilty party thereto; hence that plaintiff had his election to remain a stockholder and sue at law for damages, or to tender back what he received and sue in equity for a rescission of the contract of subscription to the capital stock and the agreement men-

tioned in the complaint, and for a return of the money paid on such subscription. He chose the latter, and no claim is made by appellants but that the complaint states a cause of action for such recission, and none can be seriously made.

The court, after properly holding that the complaint states a cause of action in equity for a rescission of the contract whereby plaintiff incurred the obligation to pay $3,000 for stock in the corporation, and paid thereon $1,120, proceeded to determine the rights of the parties in such a way that we cannot understand definitely upon what theory the judicial mind acted, consistent with any known rules of law or equity.

Many exceptions were taken by appellants to the findings of fact, but, in so far as such findings determine facts, properly so called, we are unable to say that there is not sufficient evidence to support them; therefore, they cannot be disturbed.

It is, in effect, determined that the stockholders of the company, at a regular meeting, in ignorance of the contemplated fraud of *Warner, Warner,* and *Wambold,* authorized them to purchase the land from Siegert for $45,000, in accordance with the plan of the promoters, upon which plaintiff's subscription was secured by such promoters; that thereafter such purchase was consummated, the land being transferred to the corporation ostensibly at a cost of $45,000, when in fact the cost of the property to such promoters was but $32,727; that they realized the difference as profits, without the knowledge of stockholders of the corporation other than themselves; that the corporation was not connected with the fraud in any way, hence not liable, and was entitled to have the complaint dismissed as to it, but without costs.

If the corporation was in no way connected with the fraud, yet was brought into court charged as a guilty party, it is difficult to perceive why the complaint was dismissed as to it without costs; but that question is not here. Refer-

ence is made to it only in the course of a necessary state-
ment of the condition of the record in our efforts to deter-
mine upon what theory the judgment appealed from was
rendered. Having found that the corporation was in no
way connected with the fraud, the learned trial judge, by
the first conclusion of law, determined that *Warner, Warner,*
and *Wambold* were promoters of the corporation, and its
agents, and that they acquired, as profits in the transaction,
the difference between the cost of the land to them and what
they turned the same over to the corporation for, in viola-
tion of their trust relations as such agents and promoters.
In this the court appears to have drifted to the idea of appel-
lants' counsel that the action was one to redress a wrong to
the corporation. It, in effect, acquits the corporation of all
wrong, yet such conclusion is followed by another to the ef-
fect that plaintiff is entitled to have his subscription to pur-
chase the land, and *his subscription to the stock of the corpo-
ration as well*, rescinded, and to recover of *Warner, Warner,*
and *Wambold* the $1,120, which, by the sixth finding of fact,
the court determined was paid to the corporation on the
contract of subscription to stock made with such corpora-
tion. By these facts we meet with the novel situation that
the corporation is held free from fault, and the action as to
it is dismissed, leaving the $1,120 it received of plaintiff as
its rightful property; yet there is an apparent attempt by
the judgment to rescind the contract of subscription for the
stock, so as to wipe out any further liability of plaintiff
thereon. Defendants *Warner, Warner,* and *Wambold* are re-
quired to return the $1,120, which they never received, with
interest, to plaintiff; the latter having delivered the certifi-
cate of stock into court, reassigned to them, as the finding
states. This language is obviously used on the theory that
the money was paid to *Warner, Warner,* and *Wambold,* and
the stock received from them. Plaintiff could not be said
to have reassigned the stock to them unless it was previously
assigned to plaintiff.

Franey vs. Warner and others.

It is, as said before, difficult to perceive, consistent with any known rules of law or equity, upon what theory the trial court proceeded; but the legal effect of the judgment, acquitting the corporation of all wrong and dismissing the action as to it, leaves the contract of subscription to the stock, between plaintiff and the corporation, in full force, notwithstanding the language of the judgment rescinding such subscription. The judgment of rescission of the subscription can have no greater effect upon the corporation, in view of the fact that the action against it was dismissed, than as if the corporation had not been joined as a party at all. To hold otherwise would render the judgment so conflicting as to be void for uncertainty. Plaintiff has not appealed from the judgment in favor of the corporation on the cause of action set out in the complaint. That part of the judgment is in force as to all parties. The contract of subscription to the stock is binding on plaintiff, and the corporation is the lawful owner of the $1,120 paid thereon, and of the claim against plaintiff for the unpaid portion thereof. Upon what theory, then, can the judgment of rescission and for a recovery against *Warner*, *Warner*, and *Wambold* for a return of the $1,120, which they never had, upon a reassignment of stock to them, which was not received from them, stand? This question is one upon which neither counsel for appellants nor respondent have furnished the court any light.

The construction which the court gave to the paper signed by respondent, whereby he originally became a party to the scheme to form a corporation to purchase the property, may furnish some explanation of what followed. Such paper, omitting the description of the land, is in the following words: "We, the undersigned, hereby subscribe to the amount set opposite of our respective names in a corporation to be formed and known as the Wauwatosa Park Co., for the purchase and selling of the following property, . . . for the sum of forty-five thousand dollars ($45,000), and

agree to pay for the same as follows, to wit: Thirty-three and one-third per cent. (33⅓%) of the amount subscribed in cash, or more, within thirty (30) days from the date of subscription; the balance within five (5) years from said date; the deferred payments bearing interest at the rate of six per cent. (6%), payable semi-annually." By the third finding of fact, so called, which was excepted to by appellants, the court construed such paper as a contract, binding the parties thereto to join in the purchase of the land at $45,000, and a subscription to the stock of the corporation. The judgment, in terms, rescinds the obligation which plaintiff incurred by signing this paper upon the theory that it was a contract between plaintiff and the other *bona fide* stockholders and *Warner, Warner,* and *Wambold* to buy the land, which plaintiff was induced to sign by the fraudulent representations of the appellants, and by means of which he parted with the $1,120. Upon no other theory can we see any ground whatever for the judgment against appellants for the return of the $1,120 as upon the rescission of a contract made with them. The trouble with such theory is that it proceeds on a misconstruction of the instrument. Such instrument was a mere proposal by the signers thereof to take stock in a corporation to be formed for the purpose of buying the land. By signing it, plaintiff did not contract to join with appellants as individuals to buy the land, nor did he thereby subscribe to stock or become a stockholder in the corporation in any sense. It was a proposal not binding upon anybody until accepted by the corporation. When it was presented to the corporation, and accepted by it, each of the subscribers thereto became a stockholder therein, and became liable to pay for stock to the amount indicated opposite his name in the subscription paper. The contract of subscription made by such proposal and such acceptance could not thereafter be rescinded for any fraud for which the corporation was not liable. The character of such a

subscription paper was recently discussed and determined in this court in *Badger Paper Co. v. Rose*, 95 Wis. 145, where many authorities on the subject are cited.

It follows from the foregoing that it was error to hold that plaintiff could recover of the appellants on the rescission of a contract made with a third person, the corporation.

But if the contract of subscription, so called, contained in the paper referred to, could be considered a contract with appellants to buy the land, and if it were true that the $1,120 was paid to them (two very necessary elements for a recovery on a rescission in equity), it must yet be borne in mind that such an action will not lie unless the defrauded party is in a condition to restore the person charged with the fraud to his former situation. *Potter v. Taggart*, 54 Wis. 395; *Churchill v. Price*, 44 Wis. 540. The interest in the land which plaintiff acquired, if any, was conveyed to the corporation, and thereby placed beyond the control of respondent; hence it was impossible for him to restore such interest to appellants. Therefore, necessarily, his cause of action to rescind the contract and recover back his money, if it ever existed, is gone.

Looking at the case in the most favorable light for respondent, *Getty v. Devlin*, 54 N. Y. 403, 70 N. Y. 504, appears to touch it at every point, and unfavorably to appellants. The facts there were that four persons had acquired some oil lands at an expenditure of not to exceed $30,000. They combined to form a corporation for the purpose of selling such lands thereto for $126,000. In furtherance of such scheme they prepared and sent out a subscription paper, signed by each of them, for $5,000, worded as follows: "We, the undersigned, do hereby subscribe and agree to pay forthwith the amount set opposite our names for the purchase of property in Washington, Monroe, and Athens counties, Ohio, as per memorandum annexed, . . . at the sum of $126,000; payments to be made to Daniel Devlin, Esq., at

Broadway Bank, trustee for the purchasers, in whose name
the title to the property shall be taken; said property to be
put into an association for development upon such terms as
these subscribers may elect after this subscription is com-
plete." None of the promoters of the scheme intended to
pay anything upon their subscriptions. They let several
persons into their secret, including some relatives, from whom
they obtained other fictitious subscriptions, and obtained
*bona fide* subscribers for the balance of the stock; the amount
being $64,500. Such *bona fide* subscribers became parties to
the transaction without knowledge that the promoters owned
or controlled the land, and upon the faith of the representa-
tions contained in the paper, and made otherwise by the
promoters, that all the subscribers were to stand equally.
They did not know that such promoters were the real sellers,
and purposed turning the property over to the corporation
at a large profit to themselves. Such *bona fide* subscribers
paid their money to Devlin in accordance with the subscrip-
tion paper. The title was thereafter taken as provided in
such paper. The corporation was organized and stocked at
$1,000,000, and, in order to have such stock fully paid, the
property was conveyed to the corporation, and the entire
stock delivered in payment thereof. The stock was there-
after, except $20,000 retained for working capital, divided
between all the subscribers, fictitious and *bona fide* as well,
in proportion to their respective subscriptions. The pro-
moters of this scheme obtained their stock without paying
anything therefor, and divided among themselves upwards of
$30,000 as profits. On discovery of the facts, several of the
defrauded stockholders tendered to Devlin, the trustee, the
stock they had received, and demanded back their money,
which was refused, and thereupon they brought an action to
rescind the contract whereby they joined in the scheme for
the purchase of the land, and for a recovery from the pro-
moters of the money which they had paid.

Franey vs. Warner and others.

The case so presented was much stronger in support of a recovery than the one before us, because the action was brought against the persons from whom the stock was received, and to whom the money was paid. The court held that the action of the promoters in inducing others to join with them in the purchase of the land upon the pretense that all were to share in such purchase at the original cost, without disclosing their ownership, and the fact that they purposed making a large profit in the transaction, was a fraud upon all subscribers who were ignorant of the facts. The court reached the conclusion without difficulty that plaintiffs were entitled to relief against the promoters in some form, but not to a rescission of the contract of subscription, and a return of all the money plaintiffs had advanced, for the obvious reason that they were not in a situation to return to the promoters the interest in the land such subscription represented. Such interest had been transferred to the corporation by the promoters, and a delivery of the stock to the latter did not restore such interest as they possessed it before the transfer. EARL, J., speaking for the court, said: "Plaintiffs could not recover back all the money paid by them, because they could not restore the promoters to the position they were in before the transfer of the real estate to the company." True, the facts were that the real estate had been lost to the corporation, so that a tender of the stock did not carry with it, even indirectly, any interest in the land; but, in our opinion, the fact that the corporation had parted with the land made no difference. Whether it had or had not, the transfer of the stock to the promoters could not restore them to their former position. The cause was reversed, and on the second appeal (70 N. Y. 504) the court held the action maintainable in equity for an accounting of the profits received by the promoters, and a recovery by the plaintiffs of their share of such profits. On both appeals, but most distinctly on the

first, the court held also that each of the stockholders might have maintained an action at law to recover of the promoters the increased cost of his stock growing out of the profits made by such promoters.

The doctrine of the case, which we approve, may be stated as follows: If a person invites others to join with him in the purchase of property at a given price, falsely representing that the purchase is to be made of a third person, and that all are to share equally in the cost and equally in the benefits of the enterprise, and such others join with such person on the faith of such representations, and the purchase is made accordingly, each of the *bona fide* purchasers paying his portion of the money, and such person acquires secretly a profit to himself by reason of having obtained the property after the making of the mutual agreement at a much less sum than the price to his associates, or by reason of having acquired the property at a much less sum before such sale, it is a fraud upon such others, and each may, by restoring such person to his original situation, rescind the contract and recover back his money in an action at law; or he may offer to restore, and, by keeping such offer good, sue in equity for a rescission of the contract and for a recovery of his money; or, without restoring, he, or all similarly interested joining, may sue in equity to charge such person as a trustee of the profits fraudulently retained by him, and for an accounting; or each may sue such person at law for damages for the fraud to the extent of the enhanced value he paid by reason thereof.  A person so circumstanced stands in a relation of trust and confidence to all his *bona fide* associates, and holds all profits secretly made for the common benefit of all engaged in the common enterprise, in proportion to their respective interests.  A violation of his duty in that regard constitutes actionable fraud, and such is the case whether the purchase be made before or after the agreement for the mutual enterprise.

Such is the settled law by the great weight of authority. Cases cited, where a person sells his own property to a company in which he is interested at an increased price, fairly and openly, free from representations that he is selling the property of another, have no application to this case. *Bergeron v. Miles,* 88 Wis. 397; *Whitney v. Fairbanks,* 54 Fed. Rep. 985; *Bentley v. Craven,* 18 Beav. 75; *Teachout v. Van Hoesen,* 76 Iowa, 113; *Brewster v. Hatch,* 122 N. Y. 349; *Whigham's Appeal,* 63 Pa. St. 194; *Simons v. Vulcan O. & M. Co.* 61 Pa. St. 202; *Paddock v. Fletcher,* 42 Vt. 389; *Fountain Spring Park Co. v. Roberts,* 92 Wis. 345.

It is evident from what has preceded that there was no contract between respondent and appellants other than the mutual arrangement that they should take stock in the corporation to be formed to buy the land. It was error to adjudge a rescission of it: First. Because respondent was not in a position to restore the appellants to their former position. An assignment of stock to them which they never owned did not accomplish such restoration. Second. Because the money was paid by respondent, not on the mutual agreement to take stock, made with appellants, but on the contract of subscription to the capital stock of the corporation, made with it.

It follows from the conclusions reached that the judgment must be reversed, though not that plaintiff is not entitled to any relief, on the facts found and facts disclosed by the evidence, for the wrong done him. In our opinion, the complaint states a cause of action in equity for an accounting, and a recovery of profits retained by the promoters, which in justice and equity belong to plaintiff, and that the allegations in that regard are fully covered by the findings of fact. Such was the determination of the court in *Getty v. Devlin, supra,* and is supported by *Brewster v. Hatch, supra; Petrie v. Torrent,* 88 Mich. 43; Pomeroy, Eq. Jur. §§ 910, 912; *Hill v. Lane,* L. R. 11 Eq. 215. Says Mr. Justice RAPALLO,

in effect, on the second appeal in *Getty v. Devlin, supra,* there can be no doubt of the liability of parties so circumstanced to account to their associates for the profits made by them, nor that such an accounting is a proper subject for cognizance of a court of equity.

In our opinion, plaintiff is entitled to recover in this action upon another principle, well established in equity jurisprudence, and broadly applied where the distinction between courts of equity and courts of law has been abolished, as in this state.   Such principle is that, if a person in good faith brings an action in equity, alleging facts sufficient to constitute a good cause of action within some recognized principle of equity jurisprudence, but fails to establish some fact essential thereto, yet does establish a state of facts entitling him to some relief by way of damages or otherwise, the court will not dismiss the bill, and thereby render further litigation necessary, but will retain it and render such judgment as will do complete justice between the parties.   *Hall v. Delaplaine,* 5 Wis. 206; *Tenney v. State Bank,* 20 Wis. 152; *Kelley v. Sheldon,* 8 Wis. 258; *Combs v. Scott,* 76 Wis. 662; *Cole v. Getzinger, post,* p. 559; *Wyckoff v. Victor S. M. Co.* 43 Mich. 309.

The court found that the appellants made out of the scheme a clear profit of $12,272.  Such profits obviously consisted largely of full paid stock, but which, under the circumstances, should be accounted for at its par value in money, though without interest up to the time of the commencement of the action; and the cash profits should be accounted for without interest as well, inasmuch as plaintiff paid only a little over one third upon his stock, and is not liable for interest on the balance until in default on calls.   On that basis, on a just and true accounting, plaintiff, as owner of one fifteenth of the stock, is entitled to one fifteenth of the profits, or $851.47, with interest at the rate of six per cent. per annum from the time of the commencement of this ac-

tion; and, if damages are assessed on the theory that, though plaintiff cannot have judgment rescinding the contract and for a recovery of the money paid, he is entitled, under the circumstances, to have his damages assessed, and recover the same in this action, instead of being sent out of court to sue therefor at law, the result is the same.

*By the Court.*— The judgment of the circuit court as to the appellants is reversed, and the cause remanded with directions to enter judgment in accordance with this opinion.

The rescission of a subscription to stock for fraud or misrepresentation is the subject of a note to *Fear v. Bartlett* (81 Md. 435) in 33 L. R. A. 721.— REP.

Orren T. Williams, for the appellants.

For the respondent there was a brief by *N. S. Murphey,* attorney, and *H. K. Curtis,* of counsel, and oral argument by *Mr. Murphey.*