Franey vs. The Wauwatosa Park Co.   Maloney vs. Same.

FRANEY, Appellant, vs. THE WAUWATOSA PARK COMPANY, imp., Respondent.

MALONEY, Appellant, vs. SAME, Respondent.

*March 2 — March 22, 1898.*

*Election of remedy.*

In an action against a corporation and its promoters to recover moneys which the plaintiff was induced to pay for stock by the false representations of such promoters as to the price of certain land that was conveyed by them to the corporation, judgment was rendered against the promoters but not against the corporation, but on appeal by the promoters the judgment was reversed on the ground that the plaintiff's contract to buy stock could not be rescinded as to the promoters and affirmed as to the corporation, and on filing the *remittitur* the plaintiff recovered of the promoters the amount due from them on an accounting for the profit they had made by charging the corporation an excessive price for said land.   He then appealed from the judgment in favor of the corporation.   *Held*, that he had elected his remedy and affirmed his contract to buy stock.

APPEALS from judgments of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge.  *Affirmed.*

The facts in the cause are stated in the opinion.

*N. S. Murphey*, for the appellants, argued, among other things, that the promoters were the authorized agents of the corporation, and it is chargeable with their fraudulent representations by means of which subscribers to the stock were obtained.  Cook, Stock, §§ 140, 145, 356; *Capel & Co. v. Sim's Ship Composition Co.* 58 L. T. Rep. (1888), 807; *Atlantic Cotton Mills v. Indian Orchard Mills*, 147 Mass. 268; *U. S. v. State Bank*, 96 U. S. 36; *Atlantic Bank v. Merchants' Bank*, 10 Gray, 532; *Skinner v. Merchants' Bank*, 4 Allen, 290.

For the respondent there was a brief by *Lyman G. Wheeler*, and oral argument by *Mr. O. T. Williams* and *Mr. Wheeler*.

CASSODAY, C. J.  It appears from the record: That November 1, 1891, one Benjamin Seigert was the owner and in possession of twenty-seven and three-elevenths acres of land described, and was willing to sell the same for $1,200 per acre,— that is to say, for $32,727.27.  That about the middle of November, 1891, he made a contract with the defendant Edgar E. Warner to sell the land to him for that price.  That thereupon the defendants Edgar E. and Arthur W. Warner and John S. Wambold, with the purpose of purchasing the land at that price and selling the same to the defendant corporation to be thereafter formed, drew up a subscription to the following effect, with the description of the land omitted: "We, the undersigned, hereby subscribe the amount set opposite of our respective names in a corporation to be formed and known as the *Wauwatosa Park Company* for the purchase and selling of the following property . . . for the sum of $45,000, and agree to pay for the same as follows:" One third or more of the amount

subscribed in cash within thirty days from the date of subscription, the balance within five years from said date, with interest on deferred payments at six per cent., payable semiannually. That thereupon Edgar E. Warner signed such subscription for the amount of $10,500, but neither Arthur W. Warner nor Wambold signed the same, but it was signed by other persons, including the plaintiff *Franey* for $3,000, and the plaintiff *Maloney* for $500, so that the total amount, with the subscription of Edgar E. Warner, was $54,500. That December 9, 1891, in pursuance of the purpose mentioned, the two Warners and Wambold did prepare, sign, and acknowledge, and cause to be filed, as required by the law, articles of incorporation of the defendant park company, with a nominal capital of $45,000, divided into shares of $100 each, for the purchasing, holding, leasing, and selling, and dealing in real estate, and doing all things necessary, incident to, convenient, or desirable in or about said business.

It further appears: That January 7, 1892, the defendants Edgar E. and Arthur W. Warner and Wambold convened, and elected themselves and others a board of directors. That on the same day such directors held a meeting, and elected Wambold president, Arthur W. Warner vice-president, and Edgar E. Warner secretary and treasurer, of the corporation for the then ensuing year. That the defendants caused the whole amount of the capital stock of the corporation — that is to say, $45,000 — to be issued to various persons, some of whom were subscribers, and some of whom were not subscribers, and, among others, to Edgar E. Warner $4,382, to Arthur W. Warner $1,409, and to John C. Wambold $1,409, each for full-paid stock, no consideration being paid therefor by either of them, or, if paid, then they were, respectively, paid out of the moneys realized by them, and unlawfully appropriated to their own use in the amount of the difference between $45,000 and $32,727.27. That January 14, 1892, the plaintiff *Franey* paid the defendant park

company, upon his subscription, $1,000 in cash, and July 1, 1893, the further sum of $120, and received in return therefor three certificates of stock in the company, each for ten shares of the capital stock of the company, signed by Edgar E. Warner, secretary, and John C. Wambold, president, certifying that one third of the same had been paid to the company.   That January 22, 1892, the plaintiff *Maloney* paid to the park company upon his subscription $500, and received in return therefor a certificate of stock in the company for five full-paid shares of the capital stock, signed by Edgar E. Warner as secretary and John C. Wambold as president, certified to be full-paid stock.   That February 27, 1892, Benjamin Seigert, as owner of the land mentioned, conveyed the same to the defendant *Wauwatosa Park Company*, the deed reciting a consideration of "$1.00 and other valuable considerations."   That April 10, 1895, the plaintiffs *Franey* and *Maloney* respectively gave notice to all of the defendants that they elected to rescind their contracts of subscription to purchase the land and to the stock of the corporation on the ground that the same were entered into by them in pursuance of the false and fraudulent representations made by the defendants, and then and there demanded the repayment of the moneys so paid by them, respectively, with interest, and the return to the plaintiff of the contract of subscription, and therein offered to reconvey, assign, and deliver to the defendants, or either of them, the several certificates of stock, to the end that the contract might be canceled and held for naught; which demands and offers were then and there refused by the defendants, respectively.

On April 16, 1895, the plaintiff *Franey* commenced an action against the park company and the two Warners and Wambold for the rescission of such contract, and to recover back the $1,120 so paid by him, and interest thereon from the times of payment; and on the same day the plaintiff

*Maloney* commenced an action against the same defendants for the rescission of such contract, and to recover back the $500 so paid by him, and interest thereon from the time of payment. The Warners and Wambold answered, and the park company separately answered.

At the close of the trial the court found, in effect, that such subscriptions and payments thereon by *Franey* and *Maloney*, respectively, were procured by the false representations and fraud of the two Warners and Wambold; that the defendant the *Wauwatosa Park Company* was properly made a party defendant therein, but that it was not responsible for the frauds practiced upon the plaintiffs, respectively, by the other defendants above named, and did not participate therein; and that this suit, as to the said corporation, could not be maintained for the recovery of damages against it.

As conclusions of law the court found, in effect, that Edgar E. Warner and Arthur W. Warner and Wambold were promoters of the corporation in the matter of the organization thereof, and were agents of the corporation in the matter of the purchase of the land; that both of such relations were trust relations; that they had no right to make any profit out of the purchase of the land, and that the profits so made by them were so made in fraud of their trusts, and contrary to equity and good conscience; that the plaintiffs *Franey* and *Maloney*, respectively, were entitled to judgment rescinding the contract of subscription to purchase the land, and to the stock of the corporation, upon reassigning to Edgar E. and Arthur W. Warner and Wambold their interests in the several certificates, and filing the same with the clerk of the trial court, and also to recover the moneys so paid by *Franey* and *Maloney*, respectively, with interest from the times of such payments, with costs and disbursements of the action; and that as to the defendant the *Wauwatosa Park Company*, the action be dismissed without costs to either party.

From the judgment entered thereon accordingly, the defendants Edgar E. and Arthur W. Warner and Wambold appealed to this court, and the same was reversed on the ground that the contract could not be rescinded as to such promoters and at the same time affirmed as to the park company. *Franey v. Warner*, 96 Wis. 222. Upon the *remittitur* being filed, and the opinion and judgment of this court therein, the trial court, on or about June 17, 1897, on motion of *Franey's* attorney, directed judgment to be entered in his favor against Edgar E. and Arthur W. Warner and Wambold for $851.47, with interest thereon at six per cent. from April 16, 1895, and judgment was thereupon entered accordingly, and such judgment was fully paid and satisfied September 2, 1897. The trial court, on like motion of *Maloney's* attorney, on or about June 19, 1897, directed judgment to be entered in his favor and against Edgar E. and Arthur W. Warner and Wambold for $141.91, with interest thereon at six per cent. from April 16, 1895, and judgment was thereupon entered accordingly, and such judgment was fully paid and satisfied September 2, 1897.

On June 22, 1897, the plaintiff *Franey* and the plaintiff *Maloney*, respectively, appealed from so much of such original judgment entered September 18, 1896, as was in favor of the park company, and dismissed the actions, respectively, as against that company.

The subscription to the capital stock in the corporation to be formed for the purchase and sale of the land, although voidable, as having been procured by fraud and false representations, yet was not absolutely void. It is well established that a party who seeks to rescind a contract or transaction on the ground of fraud must do so *in toto;* that he cannot affirm it in part and disaffirm it as to the residue. *Weed v. Page*, 7 Wis. 503; *Hendricks v. Goodrich*, 15 Wis. 679; *Hollenback v. Shoyer*, 16 Wis. 499; *Grant v. Law*, 29 Wis. 99; *Hyslip v. French*, 52 Wis. 516; *Friend Bros. Clothing Co. v. Hulbert*, 98 Wis. 183.

The three promoters, Edgar E. and Arthur W. Warner and Wambold, purchased the land, and had it conveyed by Seigert to the park company. On the trial the court found that the park company was not responsible for the frauds practiced upon the respective plaintiffs by the promoters, and that the park company did not in any manner participate in any of such frauds; and hence the judgment dismissed the action as against the park company, and to that extent affirmed the contract and the validity of the stock. Nevertheless, the judgment retained the action as against the promoters, and rescinded the contract of subscription and to the stock. The promoters appealed to this court from that part of the judgment against them, and it is to be regretted that the respective plaintiffs did not appeal at the same time, so that the whole matter might have been before this court, and considered upon the merits, and wholly disposed of at the same time, according to the rights and equities of the respective parties. By such failures of the plaintiffs to so appeal, this court, when the case was here before, assumed, and was necessarily bound to assume, that the respective plaintiffs acquiesced in so much of the judgment as affirmed the contract and transaction by dismissing the action as against the park company, and so we were compelled to reverse the only part of the judgment over which we had jurisdiction on that appeal, because it undertook to rescind the contract of subscription and to the stock, and still leave the title to the land in the park company. Nevertheless, we held, in the language of Mr. Justice MARSHALL, in effect, that "the complaint states a cause of action in equity for an accounting, and a recovery of profits retained by the promoters, which, in justice and equity, belong to plaintiff, and that the allegations in that regard are fully covered by the findings of fact;" that the plaintiff was entitled to recover, upon the principle "that, if a person in good faith brings an action in equity, alleging facts sufficient to constitute a good cause of action within some recognized principle of

equity jurisprudence, but fails to establish some fact essential thereto, yet does establish a state of facts entitling him to some relief by way of damages or otherwise, the court will not dismiss the bill, and thereby render further litigation necessary, but will retain it, and render such judgment as will do complete justice between the parties." *Franey v. Warner,* 96 Wis. 222. Such ruling was necessarily an affirmance of the contract and the validity of the stock held by the respective plaintiffs. They each acquiesced in such decision by moving for and obtaining judgment in their favor as therein directed. Having obtained the full benefit of such judgment in their favor, they now seek to reverse the other branch of the judgment, and have us hold that the contract and stock certificates were rescinded, and that they can recover back the balance of the money they respectively paid, and interest.

We are clearly of the opinion that by such acquiescence and conduct on the part of the plaintiffs they have each elected to affirm the contract of subscription and the validity of the stock, and such election is conclusive upon them on this appeal. We refer only to a few of the numerous adjudications bearing upon the question. "Where an action has been brought for part of the items of a running account, omitting other items of the same account which were due at the time, and judgment has been recovered therefor, such judgment is a bar to another action afterwards brought to recover for the items so omitted." *Borngesser v. Harrison,* 12 Wis. 544; *S. C.* 78 Am. Dec. 757. "A judgment defendant is estopped from alleging that usurious interest was included in the judgment in a subsequent suit to recover treble the amount of such interest." *Heath v. Frackleton,* 20 Wis. 320. It is a maxim of the law that "a man shall not be permitted to 'blow hot and cold' with reference to the same transaction, or insist at different times on the truth of each of two conflicting allegations, according to the promptings of his

private interests." Broom, Leg. Max. (7th ed.), 168; *Kaehler v. Dobberpuhl*, 60 Wis. 261. "The rule is universal that where a party has the choice between two inconsistent remedies or causes of action, and he deliberately adopts the one, such election becomes conclusive upon him, and' precludes him from subsequently adopting the other." *Warren v. Landry*, 74 Wis. 151, and cases there cited. Of course, the party so electing must know all the facts. So, in a later case, it has been held that " an action *ex contractu* to recover money paid by a bank to defendant, and alleged to have been had and received by him to the use of plaintiff, is an election to ratify and affirm the payment, and precludes a subsequent action to recover the money from the bank on the ground that such payment was unauthorized." *Crook v. First Nat. Bank*, 83 Wis. 32.

To rescind a contract or transaction is certainly inconsistent with the recovery of damages or loss of profits by reason of fraud in obtaining the contract or transaction. By accepting of such damages or profits, the respective plaintiffs put themselves in substantially the same position they would have been in had they originally joined the three promoters in the purchase and sale of the land and division of the profits. " The ratification by one of the unauthorized act of another operates upon the act ratified precisely as though authority to do the act had been previously given, except where the rights of third parties have intervened between the act and the ratification." *Cook v. Tullis*, 18 Wall. 332. To the same effect, *Bolton Partners v. Lambert*, 41 Ch. Div. 295. Upon the question of a party being bound by his election of remedies, see, also, *Wirth v. Bartell*, 89 Wis. 596, and cases there cited.

*By the Court.*— The portions of each of the two judgments of the circuit court appealed from are affirmed.