## GAST v. KING *et al.*

No. 622.    Opinion Filed November 16, 1910.

1.   CORPORATIONS—Subscriptions to Stock—Fraud.   A secret agreement to release one set of subscribers, or one particular subscriber, to stock in a corporation, is unfair and a fraud upon other subscribers.

2.   SAME—Sufficiency of Petition.   Petition examined, and held to state facts sufficient to state a cause of action.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; Geo. W. Clark, Judge.*

Action by Franklin L. Gast against Alphonse L. King and others.   From a judgment for defendants, plaintiff brings error.   Reversed and remanded.

*Fred S. Caldwell,* for plaintiff in error.

KANE, J.   This was an action commenced by the plaintiff in error, plaintiff below, against the defendants in error, defendants below, to recover the purchase price of certain stock in a corporation, upon the ground that the sale was procured by the fraud and deceit of the defendants.   A general demurrer to the petition was sustained by the court below, and, the plaintiff electing to stand on his petition, judgment was rendered against him.   To reverse this judgment, this proceeding in error was commenced.

We think the petition states facts sufficient to constitute a cause of action against the defendants.   The petition is very long, and, as there is no brief on behalf of the defendants in error to assist the court in analyzing it, we may have overlooked the ground or grounds upon which the court below sustained the demurrer. The petition states, in substance, that on or about the 15th day of September, 1906, the defendants King and Keith called upon the defendants Turner and Anderson and proposed the organizing of a corporation under the laws of the territory of Oklahoma, for

the purpose of manufacturing, buying and selling patent articles. That King stated to Turner and Anderson that he would make over and assign to said corporation his design for an advertising frame, as per letters patent, of date the 20th of July, 1897, serial number 27404, patent office United States of America, together with all improvements thereon, as his subscription to the capital stock. That King and Keith stated to Turner and Anderson that they desired to have them connected with corporation for the purpose of using their names as well known and financially responsible business men to induce others to subscribe for stock in said corporation and pay therefor; that if they, Turner and Anderson, would consent and agree to so lend their names to said corporation, then said King and Keith, as the promoters of said corporation, would cause to be issued to them, without anything being paid into the treasury of said corporation therefor, certain blocks of the capital stock of said corporation when the same was organized, and that such stock would then be valuable in the hands of the said Turner and Anderson by reason of the sums which other subscribers would pay into the treasury of said corporation and by reason of said interest in said King's patent right. That said Turner and Anderson did then and there secretly agree with said King and Keith, as the promoters of said proposed corporation, to lend their names to said promoters as to said corporation for the purpose of enabling said promoters to hold out and represent them as being investors in said corporation, and thereby, because of the well-known reputation of the said Turner and Anderson as men of high business standing and financial responsibility, enabling said promoters to impose upon and defraud others into subscribing for stock in said corporation and paying their money therefor under the belief that said Turner and Anderson were *bona fide* investors therein. That it was then and there further agreed upon by and between the said King and Keith, as such promoters, and the said Turner and Anderson, as such pretended investors, that the amount of stock which the said Turner and Anderson should each receive for so lending

their names to said promoters and pretending to be *bona fide* investors in said corporate enterprise should be one-tenth of the entire capital stock of said corporation. That immediately after the completion of said secret agreement, King and Keith approached the plaintiff, and, pursuant to and in further- ance of the carrying out of the scheme and plan which they had then formulated and devised to the end that they might swindle and defraud him, and of which said plan and scheme the assist- ance and co-operation of the said Turner and Anderson were a necessary and essential part, proposed to him that he subscribe for stock in said corporation. That said corporation was to have a capital stock of 1,000 shares of the par value of $10 each; that said Turner had subscribed for 100 shares of said company's cap- ital stock, for which he was bound to pay into the treasury of said corporation the sum of $1,000; that said Anderson had sub- scribed for 100 shares of said company's capital stock, for which he was bound to pay into the treasury of said corporation the sum of $1,000; that Keith had subscribed for 250 shares of said company's capital stock, for which he was bound to pay into the treasury of said corporation the sum of $2,500; that said King had subscribed for 250 shares of stock of said company, for which he had agreed to sell, transfer and convey to said corporation all his said patent right as aforesaid. That said statements and rep- resentations so made to said plaintiff were false and untrue and were known to be false and untrue at the time they were made, in this: Because of said secret agreement before referred to. That the said Turner, Anderson, Keith and King were not *bona fide* sub- scribers to the capital stock of said corporation. That it was at all times understood by and among said King, Keith, Turner and Anderson that neither of said parties should pay anything for their stock, and that said stock should be issued to them without anything of value, either in the form of money or property or services being rendered therefor, and without the assets or re- sources of said corporation being benefited or enhanced in any way. That on or about the second day of October, 1906, while said

plaintiff was ignorant of the aforesaid secret agreement and while he was ignorant of the falsity of said statements and representations made to him, and fully believing and relying upon said statements and representations, he then and there agreed with said King and Keith to subscribe for the full number of 250 shares of the capital stock of said company and pay therefor at the same rate at which it had been stated to him that said Turner, Anderson, Keith and King were paying therefor, provided that King and Keith would furnish him with reasonable evidence as to the financial responsibility and business standing of said Turner and Anderson. Thereafter said King and Keith furnished plaintiff with certain letters which he accepted as reasonable evidence of the financial responsibility and business standing of said Turner and Anderson, and thereupon he definitely closed his subscription agreement, and thereafter paid for said 250 shares of said company's capital stock at the rate of $10 per share and received said corporation's stock certificate for the number of 200 shares of said stock, the balance of said shares never being issued or received by him. That after said 200 shares of stock were so issued and received by plaintiff he surrendered the same up to defendant, Anderson, without receiving anything of value therefor, on the statement and representation then and there made to him by said other defendants and said Anderson that said act was necessary and proper for the mutual interests and common welfare of all of said parties and that said other stockholders were doing the same; that defendant has never since received back or come into possession of any of said stock. That on or about the 1st day of May, 1907, plaintiff learned and discovered the fraud complained of and first learned of the existence of said secret agreement between said King, Keith, Turner and Anderson. That when said plaintiff discovered said fraud, all of said money, the full sum of $2,500, which he had paid for said stock had been expended by said corporation or appropriated by said defendants and converted to their own use. That by reason of said secret agreement by and between said King, Keith, Turner and Anderson, and

by reason of said false statements and representations made to him and upon which he relied and acted, and which he did not know to be false at the time, he has been defrauded by said defendants and damaged in the sum of $2,500.

In Cook on Corporations, sec. 152 (6th Ed.), it is said:

"There are, in general, five different remedies which are open to a subscriber induced to subscribe by fraud. He may, upon discovering the fraud, rescind the subscription by notification to the corporate authorities, without taking legal proceeding; or he may wait until sued upon the subscription, and then set up the fraud as a defense to the action at law; or he may file a bill in equity to restrain such suits at law and to set aside the subscription; and also, if he wishes to recover back payments already made on the subscription; or he may bring an action at law against the parties fraudulently issuing the subscription, and recover damages for the deceit."

The latter of these remedies seems to be the one the plaintiff elected to pursue. It has been held in many cases that a secret agreement to release one set of subscribers, or one particular subscriber, to stock in a corporation is unfair and a fraud upon other subscribers. *Foy v. Blackstone*, 31 Ill. 538; *Downie v. White*, 12 Wis. 195; *Smith v. Heidecker*, 39 Mo. 157; *Robinson v. Railway Co.*, 32 Pa. St. 334. In *Paddock v. Fletcher et al.*, 42 Vt. 389, it is held:

"The plaintiff having been induced to subscribe for a share of the capital stock of a company to be organized under the general statutes for certain legitimate purposes, by the false and fraudulent conspiracy, acts and representations of the defendants, entered into and made for the purpose of deceiving and cheating the plaintiff, and by which he was deceived and cheated, having exercised such caution and prudence as the law required on his part, and so paid the price of said share to the treasurer of the company when organized, and sustained a loss thereby, is entitled to recover damages for the fraud in an action on the case against those who committed the fraud, whether they converted the money to their own use or not; and whether they carried out the fraudulent scheme after obtaining the money or not."

*Miller v. Barber et al.*, 66 N. Y. 558, was a case in a good

many respects similar to the one at bar.    The 4th paragraph of the syllabus reads as follows

"A corporation was organized under the general manufacturing law for the purpose, as stated in its charter, of dealing in patent-rights and the manufacture and sale of patented articles. Defendant B. was president and defendant S. secretary, and both took an active part in the organization.. They, with the other promoters of the company, had purchased for $8,500 an interest in a 'patent hay-loader,' giving their notes for most of the purchase money.    The scheme to organize the company was set on foot to realize means to relieve themselves from liability thereon and to secure the advances.    The interest in said patent was conveyed to the company, and was the only property held by it to represent its nominal capital of $35,000.    To promote the sale of stock, and give credit to the enterprise, various prominent men were solicited and induced to subscribe for stock, giving their notes therefor upon a secret agreement, which was carried out, that the notes should be given up without payment.    Plaintiff was induced to subscribe for $500 of the stock, giving his note therefor, payable to defendants or bearer, upon representation of defendant B. that the invention was of great value, accompanied by a statement of the names of the stockholders, B. including in the list the names of those who had subscribed under the secret agreement. The negotiations were had in the office of defendant S., used as the office of the company.    He was in another room at the time. Stock was also sold to others upon similar representations, and enough was realized from sales to pay the advances and liabilities of the original purchasers of the patent.    Plaintiff's note was sold before maturity, and plaintiff paid the same.    In an action to recover damages from fraud, the evidence tended to show that the patent was of no value.    *Held*, that the evidence was sufficient to sustain the action, as the representation of the value of the invention was accompanied with a false representation of an extrinsic fact, calculated to, and which did, put plaintiff off his guard, and induced him to give credit to the statement of value. Also, *held,* that the representations so made by B. were properly received in evidence as against S., the evidence showing that he knew, from its inception, of the scheme for securing fictitious subscriptions, and that he accepted the benefits resulting from the fraud."

In *Gilpin v. Netograph Mach. Co. el al.*, 25 Okla. 408, 108 Pac. 382, this court held that:

"Where, in a suit on two promissory notes, the testimony disclosed that the same were executed in renewal of two other notes given by defendant to plaintiff in payment for his share of the purchase price of a worthless patent right, that defendant was induced to sign the original notes by the agent of plaintiff and L, one of defendant's copartners, by representing to. him that L., on whose honesty, good faith, and judgment defendant relied, thought it a good investment and would join his copartners in the purchase thereof and pay for and share therein equally with them, that after the deal was closed, pursuant to a secret agreement between said agent and L., plaintiff returned to L. unpaid his note and check given in payment for his share of the purchase price of said patent right, *held,* that the evidence was sufficient to take the case to the jury on the ground of fraud; *held,* also, that the execution of the renewal notes before the discovery by defendant of the fraud did not constitute a waiver thereof."

The judgment of the court below is reversed, and the cause remanded, with directions to proceed in conformity with the views herein expressed.

All the Justices concur.