# H. LEROY THAYER

## *v.*

# THE WILMINGTON STAR MINING COMPANY OF COAL CITY *et al.*

*Filed at Ottawa November 23, 1882—Rehearing denied March Term, 1883.*

1. PARTY *complainant—in bill for specific performance.* A bill for specific performance of a contract for the sale of real estate was filed by the assignee of the contract, a corporation, after its assets and property were placed in the hands of a receiver. The defendant filed his cross-bill, making the receiver a party, and the cause proceeded to a hearing on both bills: *Held,* that inasmuch as the receiver was made a party, the defendant had no substantial cause to complain that the suit was not brought in the name of the receiver.

2.  CONTRACT—*acts amounting to waiver of right to declare a forfeiture.* Where a contract for the sale of land makes the time of payment of the essence thereof, the vendor may insist on a forfeiture for non-performance by the vendee or his assignee at the proper time; but this is also a right he may waive, so as to be thereafter held to a specific performance.  So where, after default of payment, the vendor acquiesces in the *laches* of the vendee, and treats the contract as still subsisting, by applying for payment, and participates in having a receiver appointed for the vendee, praying in his petition that the receiver be required to pay him the sum due, he thereby waives his right of forfeiture, and can not afterwards insist on it without giving reasonable notice of his intention to do so, and a tender of the sum due on the day of such notice will protect the equitable rights of the vendee.

3.  SAME—*right of vendor to performance of covenant as affecting his interest.*  The purchaser of coal land covenanted with the vendor, not only to make certain payments, but also to cause to be built within a given time a railroad track from a town near the land, to intersect another railroad, and erect at the town a freight and passenger depot, and it appeared the cost of this was largely in excess of the price to be paid for the land, and that the vendor was still the owner of other coal land in the vicinity of the town, which would be enhanced in value by the construction of the railroad: *Held,* that the covenant to build the railroad was not only as a security for the payment of the purchase money by increasing the value of the land sold, which stood bound for its payment, but also an essential part of the consideration for the sale as enhancing the value of the vendor's other land, and that a specific performance of the contract to convey would not be decreed except on requiring such road to be constructed within a given time, as well as the payment of the moneys agreed to be paid.

4.  SAME—*contract construed as to debts to be paid as part of price of sale.*  In a contract for the sale of coal land the purchaser agreed to pay the vendor a certain sum, and to pay all liens and incumbrances on the land, including a mortgage thereon securing certain notes payable to the vendor, which were to be paid within three years.  The vendor had, previous to the sale, parted with four of these notes, two of them then being in the hands of the purchaser and the others in the hands of a third person, as collateral security for an indebtedness of the purchaser.  After the sale the purchaser delivered the two notes in his hands to the vendor, and he afterwards acquired the other two by paying the sum for which they were pledged: *Held,* that the purchaser or his assignee was bound to pay such four notes, as well as the others, before he was entitled to a specific performance of the contract of sale.

5.  INTEREST—*when allowed on interest.*  While it is true that compound interest will not be allowed in the absence of an agreement to pay it, yet, after interest has become due, it may, by agreement of the parties, be turned into the principal, and be made to bear interest for delay of payment, and the agreement enforced.

6. SPECIFIC PERFORMANCE—*when error to decree sale of property sold for the purchase price.* On bill by the purchaser of land for a specific performance of the contract of sale, which makes the time of payment essential, and provides for a forfeiture for non-payment on the day named, the forfeiture having been waived, it is error in decreeing the relief sought to require a sale of the land for the payment of the unpaid purchase money. The decree should find the sum due, and require its payment to the vendor by a short day, and on default of such payment declare all the rights and interest of the purchaser extinguished; and where the purchaser has agreed to build a railroad, which is of interest to the vendor, as a part of the consideration for the sale, he should be required to do so within a short time (sixty days) as a condition precedent to his obtaining a deed, or lose all his rights under the purchase.

APPEAL from the Appellate Court for the Second District ;—heard in that court on appeal from the Circuit Court of Grundy county; the Hon. JOSIAH McROBERTS, Judge, presiding.

The original bill filed in this case by the Wilmington Star Mining Company of Coal City, a corporation, seeks to compel the specific performance of a contract in relation to the sale of certain real estate therein described, situate in Grundy county, in this State. The contract is in writing, and was executed by H. Leroy Thayer and Charles H. Goold, as parties of the first part, and one Ira F. Benson, as party of the second part, and bears date October 3, 1876. Shortly after the execution of the contract, in November, 1876, it was assigned by Benson to the Wilmington Star Mining Company of Coal City, and thereupon the latter took possession of the premises, and from that time, either by its agents or its receiver, has been in possession thereof, taking out large quantities of coal, greatly exceeding in value all payments made on the contract and all expenditures made otherwise, of whatever kind.

By the terms of the contract Benson was to pay Thayer and Goold each the sum of $4300, with interest at eight per cent per annum, in three years after the date of the contract,

interest payable semi-annually; and Benson also assumed to pay two mortgages on a portion of the real estate, each made to secure the sum of $12,500, with interest at ten per cent per annum, bearing date April 1, 1875, the notes thereby secured being due in one, two and three years from date, interest payable annually, the two mortgages and the notes having been executed by the Coalfield Coal Company, and respectively given to Thayer and Goold. Benson also agreed to save Thayer and Goold harmless from all loss on account of certain other liens and incumbrances existing upon the premises, and pay the interest thereon as the same should mature, which were prior to Thayer and Goold's mortgages. Benson further covenanted to cause to be built, within six months from the date of the contract, a steam railroad track from Coal City, to intersect the Chicago and Alton railroad at or near Mason creek, and cause to be erected a freight and passenger depot at Coal City, and also to pay a royalty of ten cents per ton on all coal mined, payable monthly,—the principal sums secured by said mortgages of Thayer and Goold to be paid within three years from the date of the contract. The lands embraced in the contract,—being some nine hundred and sixty acres,—are coal lands, and had a mining shaft located thereon, with appliances for mining coal, when the contract was executed. The amounts to be paid Thayer and Goold became due and payable October 1, 1879. The bill was filed May 6, 1880, against Thayer, it alleging that Goold had assigned all his interest in the contract and lands to Bacon Wheeler and Isabella Clark, and that the company had made a satisfactory arrangement with the latter in respect of the Goold part of the contract. Time and the prompt performance of every covenant and agreement are made of the essence of the contract, and it is also provided that Benson should forfeit all rights under the contract unless the same should, in all respects, be complied with by Benson at the respective times and in the manner

therein .declared, and should also comply with all the covenants and agreements on his part to be performed.

The evidence shows that neither Benson nor the company, or its receiver, have ever paid any portion of the principal sums stipulated to be paid to Thayer; that the interest on the $4300 has been paid only to October 3, 1878, and the interest on the $12,500 mortgage held by Thayer has been paid from date of the contract to April 1, 1878, and no excuse is offered in the bill for the *laches* or failure to make the payments mentioned in the agreement at the times they severally became due. It alleges, however, that the amount due and unpaid to Thayer will not exceed $15,811; that on May 5, 1880, the complainant caused to be tendered to Thayer the sum of $15,811, in full payment of the amount his due, and demanded a deed; that Thayer refused to accept the amount or make a deed, and that complainant is ready, upon just accounting had, to pay, and it offers to pay, to Thayer, such sum as shall be found justly his due. Thayer filed a cross-bill, making the corporation and its receiver defendants thereto, setting up the making of the contract, the assignment thereof, its conditions, amounts agreed to be paid thereby, insisting that the same had been forfeited by reason of non-compliance with its terms, and for failure to make the payments at the times the same severally became due.

It appears that in April, 1878, upon a creditor's bill filed in the circuit court of Will county, alleging insolvency of the corporation, Milford D. Buchanan was appointed receiver of all the property of the company, and ever since has been in possession of the real estate, and engaged in carrying on the business of the corporation,—of mining and selling coal,— and that in pursuance of an order of the court the company executed to the receiver a deed of all its property.

The circuit court rendered a decree in favor of the complainant company, requiring it or its receiver, within forty-five days, to pay Thayer the sum of $16,794.46, and upon tender

thereof ordering him to convey to the company the real estate described in the contract. It was also decreed, that in case of failure to pay such sum within the time limited, the master in chancery, at the request of Thayer, might make sale of the interest of the company in the real estate, and from the proceeds, after paying costs, to pay said sum to Thayer. The Appellate Court for the Second District affirmed the decree on appeal, and Thayer appealed to this court.

Messrs. OLIN & PHELPS, for the appellant:

That part of the decree directing a sale is bad. *Fitzhugh* v. *Smith*, 62 Ill. 490; *Berger* v. *Potter*, 32 id. 73; *Clark* v. *Hall*, 7 Paige, 382.

The decree, in fixing the sum to be paid to Thayer at $16,794.46, is for too small a sum. Counsel discussed the evidence upon this question, fully, in the light of the contract of purchase, which provides that the vendee should pay to Goold, (one of the vendors,) $4300, and to Thayer, (the other vendor,) $4300, and also pay all incumbrances on the premises, including a mortgage to Thayer to secure $12,500, and one to Goold to secure a like sum,—"which several sums secured by said two mortgages are to be paid in full, interest and principal, within the time limited."

Mr. E. C. HAGAR, and Mr. A. O. MARSHALL, also, for the appellant:

The property having been conveyed to the receiver, the corporation can not maintain its bill, or demand a performance of the contract. High on Receivers, secs. 201, 316; *Iglehart* v. *Bierce*, 36 Ill. 133; *Miami Exporting Co.* v. *Gano*, 13 Ohio, 269. The appointment of a receiver vests in him all the title to the debtor's property. High on Receivers, sec. 447; *Porter* v. *Williams*, 9 N. Y. 142.

A party must comply with its terms before he can ask for specific performance of a contract. *Stow* v. *Russell*, 36 Ill.

18; *Cronk* v. *Trumble*, 66 id. 428; *Phelps* v. *Illinois Central R. R. Co.* 63 id. 468.

The time of payment being made of the essence of the contract, appellant's right to a forfeiture is sustained by the following cases: *Doyle* v. *Teas*, 4 Scam. 202; *Chrisman* v. *Miller*, 21 Ill. 237; *Milner* v. *Willard*, 34 id. 38; *Heckard* v. *Sayre*, id. 142; *Stow* v. *Russell*, 36 id. 18; *Supervisors* v. *Henneberry*, 41 id. 179; *Warren* v. *Richmond*, 53 id. 52; *Iglehart* v. *Gibson*, 56 id. 81; *Phelps* v. *Illinois Central R. R. Co.* 63 id. 468; *Cronk* v. *Trumble*, 66 id. 427; *McCabe* v. *Crosier*, 69 id. 501; *Brink* v. *Steadman*, 70 id. 241; *Kimball* v. *Tooke*, id. 553; *Brix* v. *Ott*, 101 id. 74.

The payment of interest upon past due interest is not unlawful. *Haworth* v. *Huling*, 87 Ill. 23; *Harper* v. *Ely*, 70 id. 580.

Mr. GEO. S. HOUSE, for the appellees:

Forfeitures are held odious in law, and courts will not search for such construction of the language as will produce one. *Hartford Fire Ins. Co.* v. *Walsh*, 54 Ill. 164; *Palmer* v. *Ford*, 70 id. 377.

The law does not favor forfeitures by construction, and contracts providing therefor are strictly construed. *Bullock* v. *Goemble*, 45 Ill. 218.

An election to terminate a contract by forfeiture is essential. *Heald* v. *Wright*, 75 Ill. 17.

A vendor may waive his right to a forfeiture by his acts treating the contract as in force, so that afterwards the vendee is entitled to notice before he exact it. *Thayer* v. *Meeker*, 86 Ill. 470.

The corporation has the right to secure and preserve its assets for its creditors. The receiver is a mere trustee.

It was not the original contract, and any subsequent one to pay compound interest is usurious. *Jenkins* v. *Greenebaum*, 95 Ill. 24.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is first urged, that the corporation is not the proper party to bring this suit. The record discloses that by decree of the Will county circuit court, of date March 15, 1878, the Hon. Josiah McRoberts, judge, presiding, Buchanan was appointed receiver. The present suit was in the Grundy county circuit court, and heard before the Hon. Josiah McRoberts. Appellant filed his cross-bill, making the receiver a party thereto, and the cause proceeded to a hearing upon the original and cross-bills. Under such condition of the record, the receiver being thus brought into the cause, we do not think the objection should be allowed to prevail that the suit was not brought in the name of the receiver, instead of that of the corporation. The cause thus proceeding, there was a tacit assent on the part of the receiver and the court that appointed him, to the suit being carried on in the name of the corporation. It would be competent for the court to protect any interest of the receiver in the decree to be made, and as respects the defendant, at least, there would not seem to be any substantial cause of complaint.

It is insisted that appellee is not entitled to a specific performance because it has not performed on its own part,—that the time of performance was, by express terms, made of the essence of the contract, and that in such case there must be performance at the exact day. This was a right which appellant might have insisted upon and stood by, and it was also a right which he might waive. After the default of payment at the time appointed, there was acquiescence in the *laches* of the vendee, and appellant treated the contract as still subsisting. He, after that time, applied for payment. He participated in the appointment of the receiver in the case of the creditor's bill, and concurred in his selection, upon the ground that he would be more likely to have paid to him his money than if another person suggested were

appointed.   The record shows that on February 20, 1880, in
the cause wherein the receiver was appointed, in the Will
county circuit court, appellant filed his petition, claiming
that the company was indebted to him on this contract, and
after alleging the amount his due, prays that the receiver
may account and pay him the amount due on account of
royalty for coal mined under the contract, and lots sold, and
that the receiver be directed, at an early day named by the
court, to pay him all the money due him.   By these acts
appellant manifested that he did not intend to rely upon his
right of forfeiture, or rescinding, for any past failure of per-
formance, but was willing to receive his money and execute
his contract, and we are of opinion they amounted to a waiver
of the right to declare a forfeiture, and insist upon time as
the essence of the contract in respect of any previous failure
of performance, and that he could not thereafter exercise
such right without giving reasonable notice of his intent to
do so.   On May 1, 1880, appellant did declare a forfeiture
of the contract for non-performance, and had notice thereof
filed for record in Grundy county, and on May 5, 1880, deliv-
ered a copy of the notice to the secretary of the company,
and on that same day the company made the tender above
mentioned, as alleged in the bill.   Under such circumstances
we think this objection of non-performance, as respects pay-
ment, should not be sustained.   See *Chrisman* v. *Miller*, 21
Ill. 227; *Thayer* v. *Meeker*, 86 id. 473; *Webster* v. *French*,
11 id. 254; Pomeroy on Specific Perform. secs. 337, 394.

But it is alleged that there is an entire want of performance
in the construction of the railroad.   It is true that it is a
stipulation of the contract that Benson should cause the rail-
road to be constructed within six months.   Appellee insists
that this provision is solely for the benefit of the property,
and for the purpose of strengthening it as security for the
payment of the purchase price, and so the payment of the
money will render the construction of the road an immaterial

affair. The contract itself does not show this. It appears the length of the road would be about six miles, and its cost about $90,000. This would be largely in excess of the purchase price, and we may suppose the benefit to the land purchased influenced, to a large extent, the making of the covenant. But the proof shows appellant to be the owner of a half section of coal land in the vicinity, which would be enhanced in value by the building of the railroad. It would not do to excuse the non-performance of this covenant on the ground of its being non-essential. It appears that there was an expectation that the Chicago and Alton Railroad Company would build this railroad, and before the making of the contract, appellee, with Benson, went to the president of that company to ascertain as to that fact, and the president assured them that the railroad company would build the road; but on their requesting him to sign a writing to that effect, he declined, and afterward the contract was made with this stipulation in it: that Benson should cause the road to be constructed within six months. It was expected Benson would be the contractor for the work. Appellant himself testified that the Chicago and Alton Railroad Company graded a line from Coal City down to their track at or near Mason creek, in the fall of 1880. Under these circumstances we are satisfied that the railroad soon will be, if it has not already been, completed. Indeed, appellee's counsel asserts, in his argument, that the road has been constructed, though the proof fails to show this. The same waiver by conduct, which we have noticed, of the payment of the purchase price on the day appointed, applies equally, we conceive, to the building of the railroad within six months; and if it be proper for that reason to dispense with payment on the day appointed, and allow a brief time for payment of the money, it is in the same manner proper that there should not be a forfeiture because of not having constructed the railroad within the time limited, and to allow a time for the construction of it.

If it be held that appellee is entitled to a decree for specific performance, it is insisted, then, that the decree is for a less sum than the amount due appellant. In this respect there is evident error in the decree. Benson agreed to pay appellant the sum of $4300, and also assumed and agreed to pay twelve notes running to appellant, eleven of them for $1000 each, and one for $1500, all secured by mortgage on the premises executed, as well as the notes, by the Coalfield Coal Company. There were other incumbrances on the land which Benson was to take the land subject to. But the language in respect to this mortgage, and another like it to Goold, is peculiar. By the contract Benson covenants to pay all the liens and incumbrances on the land of whatsoever character, including said mortgages, "or save and keep harmless said parties of the first part from any and all loss, or danger of loss, on account of said liens or incumbrances, except the said mortgages, one given to Charles H. Goold and one given to H. Leroy Thayer, as above named,—which several sums, secured by said two mortgages last named, are to be paid in full, in interest and principal, within the time limited," (three years.) For four of these mortgage notes to him, appellant seems not to have been allowed by the decree. The situation with respect to those four notes was, that Thayer had previously parted with them, two of which were in the hands of Benson, and the other two in the hands of third parties, held as collateral security for indebtedness of Benson.

The two notes in the hands of Benson were delivered by him to Thayer at the time of the execution of the contract; the two others held as collateral, Thayer subsequently acquired from the parties who so held them, paying for one $375, and for the other $605. Appellant thereafter, and at the hearing, held these four notes, as well as the eight other mortgage notes. He was the payee of the notes. The covenant was express to pay the sums represented by these notes in full, interest and principal, within the time limited,—

three years. . The two notes which Benson had in hand and had the power to deliver, he did then deliver to appellant. If Benson was not to pay these mortgage notes as a part of the purchase price, why did·he deliver them to the appellant, the payee? Why not cancel them, or hold them in his own hands as evidence that he had, so far, satisfied the mortgage? Benson was the president of this appellee corporation. Buchanan was its secretary from the date of its organization to the time he was appointed receiver. The account books of the corporation show an indebtedness to appellant for the full amount of all the mortgage notes,—$12,500. The officers of the corporation repeatedly admitted appellant to be entitled to the entire sum covered by all the twelve notes. Buchanan rendered written statements showing that all the notes were owned by appellant. One of these statements was part of his sworn report as receiver, made to the court that appointed him, filed June 10, 1878. It is a statement of account with H. L. Thayer. The first item reads: "April 3, 1878. To one-half of $2875, annual interest due H. L. Thayer and C. H. Goold, on principal sum of $28,750, at ten per cent per annum, $1437.50." This account was, upon motion of said receiver, referred to the master for examination, and by him reported to the court as correct, and at the instance of the receiver it was approved by the court. Said principal sum of $28,750 was made up of all these mortgage notes, of $12,500 to Thayer and Goold, each, and the interest which had accrued thereon at the date of the contract,—$1875 on each mortgage,—which interest Benson had agreed with appellant to turn into principal, and pay ten per cent interest on it. Another statement by Buchanan is entitled and dated, "April 3, 1877. Due Thayer and Goold,"— and then showing the sum ($1437.50) obtained by multiplying the principal sum of $28,750 by five, and which appears to be a computation of six month's ten per cent interest on $28,750. This principal sum also included all of said mort-

gage notes, and said accrued interest to date of contract.
Each of said accounts also showed to be due appellant the
further principal sum of $4300, and interest. The books of
account of the corporation, in evidence, show the debit side
of the real estate account, as follows: "To bills payable,
* * * for notes of the Coalfield Coal Company, to H. L.
Thayer, dated April 1, 1875: eleven notes for $1000 each,
and one note for $1500." And on the journal of the com-
pany appears the entry: "Real estate account, debtor, to
H. L. Thayer and C. H. Goold: interest due them April 3,
1877, on $28,750, six months, at ten per cent, $1437.50;
interest due them April 3, 1877, on $8600, six months, at
eight per cent, $344."

In opposition to all this is the testimony of Buchanan that
he was present at the making of the contract, and there was
an agreement that Thayer would induce Goold to join with
him in the conveyance to Benson of certain lots in Coal City,
and would advance the money to take up the two notes
hypothecated, in consideration of which Benson would turn
over to Thayer the two notes held by him, and also his right
in the two notes hypothecated; and then, upon repayment
to Thayer of the money advanced to take up the two notes
hypothecated, with interest, the conveyance of the lots was
to be delivered to Benson, and one-half of the four notes to
be and belong to Benson, to be indorsed on the contract, or
otherwise, as he might direct. This testimony, contradicted
by appellant, or anything else there may be in the case, we
consider as wholly without avail to overcome the other con-
clusive evidence which has been referred to, showing that all
the mortgage notes, of $12,500, belong to appellant, and are
a just indebtedness, to be paid to him before a specific execu-
tion of the contract should be enforced.

Appellant testified that soon after the making of the con-
tract, an agreement was made between him and Benson that
the interest which had accrued on the $12,500 mortgage

given by the Coalfield Coal Company to appellant, should be considered as a part of the principal sum, and should bear ten per cent interest from the date of the contract, such accrued interest amounting to $1875. Appellee recognized and acted upon this agreement, setting this amount of accrued interest down in its books as a part of the principal sum, and as bearing ten per cent interest, and made several payments of ten per cent interest upon it. It seems the circuit court disallowed such payments, as being the payment of compound interest, we presume. It is true that compound interest will not be allowed in the absence of an agreement to pay it; but after interest has accrued due, it may, by agreement between the parties, be turned into principal, and made to bear interest for delay of payment. There is sufficient evidence that such an agreement was made in this case, and we see no reason why it should not be carried out. See *Bishop Hill Colony* v. *Edgerton*, 26 Ill. 54.

There was error in decreeing a sale of the property. As soon as the amount due was determined by the decree it should at once have been paid to appellant. He should not have been subjected to the delay of realizing the money from a sale of the land. This mode of raising money by a sale of the land to pay the purchase price, is not to be permitted to a vendee. Suppose the land should sell for less than the amount due, the vendor then would not get the purchase price, and he would have been made to part with his land upon different terms than he stipulated. Appellant should not be deprived of his land before being paid the purchase money. He was entitled, as before said, to have payment of it as soon as the decree was rendered, and there should have been given but a very short day to pay it, and in default of payment at the day, all right and interest of appellee or Benson in the lands, under the contract, should have been forever extinguished.

Further, appellee is not entitled to have a specific perform-ance until there has been performance of the contract on its own part in respect of the building of the railroad, as well as of the payment of the purchase money; and if the railroad shall not have already been constructed, then there should be further decree that unless the railroad should be con-structed within a certain time, which we fix at sixty days after the entry of the decree of the circuit court, all appellee's and Benson's right and interest under the contract in the lands should be forever extinguished.

The judgment of the Appellate Court will be reversed, and the cause remanded for further proceedings conformable to this opinion.

*Judgment reversed.*

Mr. JUSTICE WALKER: I am unable to concur in some of the rules announced.