GILPIN v. NETOGRAPH MACH. CO. *et al.*

No. 318. Opinion Filed January 11, 1910.

(108 Pac. 382.)

BILLS AND NOTES—Fraud—Sufficiency of Evidence — Waiver of Fraud—Renewal of Notes. Where, in a suit on two promissory notes, the testimony disclosed that the same were executed in renewal of two other notes given by defendant to plaintiff in payment for his share of the purchase price of a worthless patent right, that defendant was induced to sign the original notes by the agent of plaintiff and L., one of defendant's copartners, by representing to him that L., on whose honesty, good faith, and judgment defendant relied, thought it a good investment and would join his copartners in the purchase thereof and pay for and share therein equally with them. that after the deal was closed pursuant to a secret agreement between said agent and L., plaintiff returned to L., unpaid his note and check given in payment for his share of the purchase price of said

patent right, **held**, that the evidence was sufficient to take the case to the jury on the ground of fraud; **held**, also, that the execution of the renewal notes before the discovery by defendant of the fraud did not constitute a waiver thereof.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; George W. Clark, Judge.*

Consolidated actions by the Netograph Machine Company and others against C. F. Gilpin. Judgment for plaintiffs, and defendant brings error. Reversed.

*Burwell, Crockett & Johnson,* for plaintiff in error.—Citing: *Coulter v. Clark,* 160 Ind. 311; *Young v. Trainor* (Ill.), 42 N. E. 139; *Smith's Estate v. Evans* (Ill.), 70 N. E. 906; *Lum v. Clarke* (Minn.), 57 N. W. 662; *Rice v. Davis* (Pa.), 20 Atl. 513; *Brown v. National, etc., Co.,* 30 Fed. 538; *W. U. Tel. Co. v. Railway Co.,* 3 Fed. 1.

*H. H. Grant* and *E. G. McAdams,* for defendants in error.— Citing: *Lee v. McClelland* (Cal.), 52 Pac. 300; *Mounan v. Sutter, etc., Co.* (Cal.), 22 Pac. 515; *Schmidt v. Mesner* (Cal.), 48 Pac. 54; *Kimball Co. v. Raw* (Kan.), 51 Pac. 789; *Simon v. Goodyear, etc., Co.,* 105 Fed. 573; *Kingman v. Stoddard,* 85 Fed. 740; *Grimes v. Sanders,* 93 U. S. 802; *Fairbanks, Morse & Co. v. Basket* (Mo.), 74 S. W. 1113.

Turner, J. On May 5, 1904, defendant in error, Netograph Machine Company, a foreign corporation, sued C. F. Gilpin, plaintiff in error, in the probate court of Oklahoma county, on his promissory note for $600, dated January 25, 1904, payable to it March 19, 1904, with interest and attorney's fees in case of suit. After issue joined there was trial to a jury, which resulted in judgment for plaintiff for $680.60 and costs, from which defendant appealed to the district court. There the cause by stipulation was consolidated with the case of E. G. Rankin v. C. F. Gilpin, also appealed by him from the probate court; the same being a suit upon a promissory note for like amount, made by defendant at the same time, payable to plaintiff, and by it endorsed to said Rankin,

who had sued and recovered judgment in that court. In the district court, after amended answer and reply filed, there was trial anew to a jury and judgment for plaintiff on both notes for $1,632. Defendant brings the case here for review.

For amended answer defendant admitted the execution of both notes, and among other defenses thereto pleaded fraud in the execution thereof, and, assuming the burden of proof, introduced testimony to maintain the issue. At the close of all the testimony plaintiff demurred to the evidence, which was sustained; and the first question for us to determine is whether the evidence is sufficient to take the case to the jury on the ground of fraud. Without undertaking to weigh conflicting testimony, but viewing it all in the light most favorable to defendant and allowing all reasonable inferences in his favor, on this point the evidence disclosed that on August 20, 1903, defendant in error was a corporation doing business under the laws of Missouri, with its principal office in St. Louis; that G. W. Fryhofer was its agent at Oklahoma City with full power to make contracts for the sale of the exclusive right to use the patent "Coin Netograph Machine No. 55241" in the Indian Territory and Oklahoma Territory; that some time prior thereto said agent put on exhibition at the Grand Avenue hotel in said city a sample of said machine for the purpose of selling its use as a patent right; that about that time defendant, being out of business, was approached by J. L. Ladd, and induced to go with him to inspect said machine, which Ladd told him was a good investment; that defendant had known Ladd as a business man in said city for a number of years; that he was regarded by defendant and generally as honest and intelligent, upon whose business judgment defendant relied. After inspecting the machine, concerning which defendant knew nothing and so informed Ladd, and that he had no faith in patents and could see nothing, owing to defective eyesight, Ladd again informed him that it was a good investment, and he, himself, was going to put some money in it, and wanted the defendant to join the company when formed and like wise invest. This he agreed to do, and later a "partnership" was formed for the purpose of handling said machines, consisting of

the defendant, Scott Thompson, J. D. Speaker, J. L. Ladd, and A. J. Brown, under the name of the Netograph Machine Company, of which defendant was elected "secretary". Concerning the deal, the testimony further discloses that defendant talked to the other partners, but mostly with Ladd, and went into it in good faith, and supposed he did, and relied entirely on Ladd and Fryhofer as to the workings of said machine, Fryhofer assuring him that Ladd was to go in and pay therefor and share therein equally with the rest; that through said Ladd and Fryhofer he was induced to enter into an arrangement, whereby all five of said partners were to join in the purchase of a number of said machines for said Netograph Machine Company with the understanding that each would own a one-fifth interest in the purchase and pay or secure therefor his proportionate share of the purchase price; that as a result of said understanding, on the date aforesaid, they entered into a written contract with the defendant in error, in which for $6,000 it granted them as parties of the second part the exclusive right and license to sell, use, lease, and employ and license others so to do for and within said territories 60 of said machines, pictures and phonograph records, the property of defendant in error, f. o. b., at St. Louis, said $6,000 to be paid as follows:

"* * * Each of said parties of the second part shall at the time of the approval of the patents hereinafter mentioned by the attorney of the party of the second part, pay the sum of five hundred ($500.00) dollars, and each of said parties shall execute their individual note to the party of the first part, due in six months after the date thereof, with six per cent. interest from date, and said notes and money to be deposited with the Oklahoma Trust & Banking Company, at Oklahoma City, O. T., to be delivered to the parties of the first part, only when the parties of the second part shall have received the said sixty machines and the said pictures and phonograph records: * * * Provided further, that the payment of said money by the parties of the second part shall be deemed and considered as a several contract. * * * *"

After said contract was signed by defendant in error and by all of said partners, defendant, in payment for his one-fifth interest in the property, executed two notes for $600 each, payable to defendant in error, and deposited the same in the bank pursuant to the

terms of said contract, and on January 5, 1904, renewed the same by executing the notes sued on. At the same time Ladd, after signing the contract, in payment for his one-fifth interest in the property, executed his note for $600 payable to defendant in error and drew a check for $500, likewise payable, deposited them in the bank, but which were later returned to him unpaid by defendant in error, pursuant to a prior secret arrangement between Ladd and Fryhofer to the effect that Ladd should pay nothing for his interest in the property. About half of the machines arrived November 13, 1904; the other half later. Each was intended to show a picture under an electric light and sing a song when a nickle was dropped in a slot and a lever pulled. They were worthless.

It is impossible to read this record without being impressed that Ladd was simply acting as a decoy for Fryhofer as agent for defendant in error to get his copartners into this deal whereby, unknown to any of them, his one-fifth interest in the property should cost him nothing. Any such trick as that is a fraud. The representation by Fryhofer and Ladd as an inducement to defendant to purchase, that Ladd, whom defendant regarded highly for his honesty, good faith, and judgment, had agreed to likewise purchase on the same terms, without disclosing the fact that Ladd's interest in the machine was to be given him as a gratuity for securing defendant and others to purchase, was such a fraud as will entitle defendant to defeat a recovery on the notes sued upon.

*Coles v. Kennedy,* 81 Iowa, 360, 46 N. W. 1088, 25 Am. St. Rep. 503, was a suit to recover upon a contract in writing for the purchase of stock in a mining company. Defendant pleaded among other things that he was induced to execute the contract by reason of the fraud of the appellant. The fraud alleged was that, to induce him to subscribe for the stock and to execute the agreement, appellant, among other things, exhibited specimens of the ore and represented to him that one Mallory had subscribed and paid for 5,000 shares in the company; that the representation was false and fraudulent; that said Mallory had subscribed for said shares with a secret contract with appellant that they should cost him nothing. Mallory had resided in appellee's town for many years,

and was known in the community as a man of much business experience, capacity, and success, whose name as a subscriber would be influential in inducing others to take stock. His name appeared upon the subscription list, and such fact was held out as an inducement to appellee to execute the contract. The court in passing said:

"The testimony shows that Mr. Mallory was to have his stock free of charge, and that it was given to him to secure the influence of his name in procuring appellee and others to subscribe. The fact that Mr. Mallory was not to pay for his stock was concealed from the appellee. To have disclosed it would have been to defeat the very purpose for which the 5,000 shares were given to Mallory. We have no doubt but the belief that Mr. Mallory had subscribed for 5,000 shares of the stock, and that he had or was to pay for the same, operated as an inducement to appellee to subscribe for stock, and execute the contract in question. This was such a fraud as cannot have the approval of a court of equity, and for which the contract induced by it should be canceled and held for naught."

*Walker v. Mobile & Ohio Ry. Co.*, 34 Miss. 245, was a suit by said road to recover certain installments then past due upon the subscription of the defendant Walker for capital stock in said company. Defendant, among other things, pleaded fraud in the procurement of the contract of subscription, in that one Wheeler, the agent of the road, procured one Nelson, an influential man in the community, who was supposed and represented by him to be well informed as to the costs and profits of certain enterprises engaged in by the road, ostensibly to subscribe for five shares of the capital stock in the same. Said Wheeler at the same time executed to him his obligation in writing, as agent of said road, at any time on request of said Nelson, to release him from said subscription. That said Wheeler fraudulently represented to defendant that, said subscription was in good faith, and that said Nelson was willing to invest money in said road; whereas, in truth, the same was only colorable, and made with a fraudulent design of inducing defendant and others to subscribe to its stock. On demurrer to this plea, the lower court held, in effect, that the same was bad, which holding was sus-

tained on appeal, in that the same failed to allege that defendant was thereby induced to subscribe, but simply stated that Nelson was falsely held out to the community by the agent as a subscriber, thereby clearly implying that, had the plea averred such inducement as is disclosed by the testimony in this case, it would have been good.

In *Coulter v. Clark*, 160 Ind. 311, 66 N. E. 739, the complaint in substance stated that theretofore the Indiana Hedge & Wire Fence Company owned the right under letters patent to manufacture, sell, and erect in Clinton county, Ind., and elsewhere, an improvement known as "a Growing Hedge & Wire Fence," and desired to sell and erect such fence in said county: that appellant, who was a banker and business man therein known to the inhabitants thereof, agreed with a certain agent of said company to induce appellee, among others, to purchase said right from said company for said county; that, pursuant thereto, appellant with other agents of said company called upon appellee and represented said right to be of great value, that he was ready to join with other citizens of said county in the purchase thereof, and to organize a corporation to be known as the Clinton County Hedge & Wire Fence Company with a capital stock of $25,000 for the purpose of engaging in said enterprise; that the plan of such proposed organization was that the persons forming said new corporation were to execute their promissory notes to the former corporation in consideration of the assignment to it of said patent right for said county, whereupon the new corporation was to issue to the persons so associated shares of its capital stock to the amount of $2 for every $1 for the sums for which their respective notes had been so executed to the former company; that, pursuant to an agreement between appellant and other agents of said company, appellant solicited appellee and other citizens to join him in the purchase of said patent right, and pretended that he was one of the joint purchasers thereof, and was executing his notes for the same, with the understanding between appellant and said other agents that, if appellant should induce the appellee and others to purchase said patent right and

enter into said scheme, then the notes executed by appellant for his part of the purchase money thereof were to be returned to him by said Indiana Company; that, pursuant to said scheme appellee and others were induced to join in said purchase and the organization of said new corporation, appellant assuring appellee and others that in his judgment it was a good investment; that appellee, having no knowledge of the facts, believed and relied thereon, and with 23 other citizens executed his two notes to said Indiana Company for a sum certain payable at certain intervals and caused said new corporation to be organized and said patent right transferred to it; that soon thereafter said Indiana Company caused the notes executed by appellant to be handed back to him for his service in carrying out said scheme; that said patent right was of no value as appellant well knew at the time; that, before appellee discovered the fraud practiced upon him, he paid said notes, and thereafter brought suit against appellant for said alleged fraud practiced upon him by appellant as a promoter of said new company. A demurrer to the complaint was overruled in the trial court and said ruling sustained on appeal. In passing the Supreme Court in effect held that the secret agreement securing a special advantage to appellant upon whose representations appellee relied in entering into the contract was a fraud on the rights of the appellee and cited in support thereof: *Western Union Tel. Co. v. Union, etc., Ry. Co.* (C. C.) 3 Fed. 1; *Chandler v. Bacon* (C. C.) 30 Fed. 538, 539, 540; *Davenport v. Buchanan,* 6 S. D. 376, 61 N. W. 47; *Walker v. Mobile, etc., Ry. Co.,* 34 Miss 245; *Coles v. Kennedy,* 81 Iowa, *360, 46 N. W. 1088, 25 Am. St.* Rep. 503; *Tolman v. Smith,* 43 Ill. App. 562.

We are therefore of opinion that the notes given in purchase of said machines were in their inception void for fraud; that said fraud was not waived by a renewal of said notes resulting in the execution of the notes sued on, for the reason that the testimony disclosed that said fraud was not discovered until after said renewal; that a discussion of a waiver of fraud by defendant retaining the machines after they were discovered to be worth-

less is not necessary to a proper decision of this case; and that the judgment of the trial court should be reversed, and it is so ordered.

All the Justices concur.