NOBLE v. FOX *et al.*

No. 1857.   Opinion Filed November 26, 1912.

(128 Pac. 102.)

SALES—Action for Price—Fraud as a Defense.   Where several persons, for the purpose of buying a horse, mutually agree to pay a certain price for him, a secret agreement between the vendor and one of them, whereby he received his share in the horse for nothing for securing the others to join with him in the purchase, is such a fraud as will entitle defendants to defeat recovery on the notes evidencing their promise to pay the purchase money.

(Syllabus by the Court.)

*Error from Superior Court, Pottawatomie County;*
*Geo. C. Abernathy, Judge.*

Action by C. O. Noble against Charles Fox and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*Paul F. Cooper,* for plaintiff in error.

*Blakeney, Maxey & Miley,* for defendants in error.

TURNER, C. J.   On September 7, 1909, C. O. Noble, plaintiff in error, sued Charles Fox and eleven others in the superior court of Pottawatomie county on two certain promissory notes for $800, dated February 1, 1907, due September 1, 1908, and September 1, 1909, respectively, with interest from date payable to plaintiff.   For answer the eleven other defendants admitted the signing of the notes, but alleged fraud in their execution and a tender back of the horse in payment for which they were given, and prayed for and obtained an order temporarily restraining plaintiff from negotiating a third note, given at the same time for the same purpose and not yet due, and that it be called in and canceled.

For separate answer Fox alleged that prior to the execution of the notes it was secretly agreed between himself and Noble that if he would form one of a "partnership" of twelve and buy the

horse for $2,400 plaintiff would pay defendant $200, his share of the purchase price, and release him from liability on the notes; that defendant accepted the offer, formed the partnership consisting of the twelve defendants, including himself, and that the horse was purchased and the notes signed by all of them; that about the time this action was commenced the other eleven defendants discovered the fraud and rescinded the sale, by reason of which, he says, he should be released from liability, as the consideration of said notes, as to him, had failed. He further alleged that the horse was not worth, at the time the notes were executed, to exceed $600.

After reply filed, there was trial to a jury, and defendants, assuming the burden of proof, introduced testimony to maintain the issues. At the close of all the testimony the court instructed the jury to return a verdict for defendants, which was done, and judgment rendered and entered accordingly, to reverse which plaintiff brings the case here.

There is no conflict in the testimony. Viewing it in the light most favorable to plaintiff, the court did not err in directing the verdict for defendants. The evidence discloses that Noble was a dealer in fine horses, and Fox an extensive and influential farmer living in the vicinity of McComb; that Noble was so informed, and a short time prior to the execution of the notes in controversy came to McComb with a stallion which he had for sale, and there met Fox; that after some talk it was finally agreed between plaintiff and Fox, with the understanding that nothing would be said about it, that if Fox would "form a partnership" of twelve, including himself, which would buy the horse from plaintiff at $200 a share, he would pay Fox $200 by turning over to him a check for that amount, then placed on deposit, as soon as the work was done, which he did, and which was afterwards cashed by Fox; that knowing Fox to be a successful stockman, and believing him when he said, as he did, that it was a good thing, an understanding was soon reached, whereby it was agreed by and between Noble, Fox, and the other eleven defendants, as follows:

"We, the undersigned, being impressed with the necessity of improving our stock, agree to buy one Percheron horse, which we have examined, of C. O. Noble, of the value of two hundred

a share, name of horse Major Rockwell, capital stock and price of horse $2,400.00, and we each, for ourselves, agree to and with said C. O. Noble and with each other that we will pay in cash at the time of delivery of said horse by C. O. Noble, to any subscriber hereto, the sum set opposite our names respectfully, or at our option we may execute a joint note payable to said C. O. Noble or bearer, secured to his satisfaction, payable one-third in one year, one-third in two years, and one-third in three years from September 1st, 1907, in equal annual installments, with interest at 7%.

"Names.                                    No. of Shares.
"Chas. Fox.                                One."

[Names of eleven other defendants for one share each.]

When the horse proved a failure, which he did for three succeeding seasons, defendants tendered him back to Noble, who, when the notes in controversy were due and unpaid, brought this suit, after which the other eleven defendants discovered the secret agreement aforesaid for the first time. As it is thus apparent that by this agreement, unknown to the eleven defendants, the stock of Fox in the horse was to cost him nothing, what we said in *Gilpin v. Netograph Machine Co. et al.,* 25 Okla. 408, 108 Pac. 382, 29 L. R. A. (N. S.) 477, is equally applicable here. There we said:

"It is impossible to read this record without being impressed that Ladd was simply acting as a decoy for Fryhofer, as agent for defendant in error, to get his copartners into this deal, whereby, unknown to any of them, his one-fifth interest in the property should cost him nothing. Any such trick as that is a fraud. The representation by Fryhofer and Ladd as an inducement to defendant to purchase, that Ladd, whom defendant regarded highly for his honesty, good faith, and judgment, had agreed to likewise purchase on the same terms, without disclosing the fact that Ladd's interest in the machine was to be given him as a gratuity for securing defendant and others to purchase, was such a fraud as will entitle defendant to defeat a recovery on the notes sued upon."

In *Jefress v. Phillips,* 31 Okla. 202, 120 Pac. 916, we said in the syllabus:

"Where, in a suit on two promissory notes, the testimony reasonably tends to prove that the same were given by defendants and another in part payment of a certain printing plant and

good will of a newspaper, that they were induced to sign said notes by plaintiff and D., who was a practical printer and newspaper man in his employ, and upon whose judgment they relied, who represented it to be a good investment, and that he would join in the purchase thereof and pay for and share therein equally with them, that after the property was sold and the notes sued on were executed, pursuant to a secret agreement between plaintiff and D., plaintiff returned or destroyed his check for $500, given in part payment of his share of the purchase price, *held,* that the evidence was sufficient to take the case to the jury on the question of fraud."

In *James McEwen v. B. P. Shannon & Co.,* 64 Vt. 583, 25 Atl. 661, in the syllabus it is said:

"Where several persons, for the purpose of inducing each other to have their cream manufactured into butter at a certain place, mutually agree to pay a certain price per pound for this service, a secret agreement between one of these persons and the company which is to do the manufacturing that the cream of that person shall be manufactured for a less price is fraudulent."

We will not consider whether the demurrer to the answer of Fox should have been sustained, for the reason that no question of law is raised in the brief in support of the proposition, and for the further reason that, as Noble and Fox are *in pari delicto,* we leave them where we found them.

We are therefore of opinion that, the evidence being undisputed, the court did right to withdraw the case from the jury and direct a verdict for defendants. *Neely v. S. W. Cotton Co.,* 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145.

All the Justices concur.