### J. CROUCH & SON v. HUBER et al.

No. 10606—Opinion Filed Sept. 26, 1922.

(Syllabus.)

**1. Contracts—Rescission for Fraud—Conditions.**

A party will not be permitted to repudiate his contract and still retain the benefits which he has derived from it. And where a defrauded party desires to rescind a contract procured through the fraud of the opposing party, of which fraud he was ignorant at the time he entered into the contract, but thereafter discovered such fraud. and elects to rescind the contract on account thereof, he must rescind promptly upon discovering the facts which entitle him to rescind; and he must restore to the other party everything of value which he has received from him under the contract, or he must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so.

**2. Fraud — Remedies Enumerated — Sales.**

A person induced by fraud to purchase property has four remedies. He may, first, upon discovery of the fraud, rescind the contract absolutely and sue in an action at law, and recover the consideration parted with upon the fraudulent contract, and in such case he must restore, or offer to restore. to the parties sued whatever he has received by virtue of the contract; or, second, he may bring an action in equity to rescind the contract, and in such a case it is sufficient for him to restore, or make offer in his petition to restore, everything of value which he has received under the contract; or, third, he may affirm the contract, retain that which he has received, and bring an action at law to recover the damages sustained by reason of his reliance upon the fraudulent representations; or, fourth, he may, in an action against him to recover the purchase price, set up the damages sustained by reason

of the fraud, as a defense or by way of counterclaim.

### 3. Trial — Instructions — Issues — Pleading.

A defendant seeking affirmative relief is required to frame his pleading in accord with some definite certain theory, and the relief to which he claims to be entitled must be in accord therewith. Instructions which fail to submit to the jury both the plaintiff's and defendant's theories with reasonable fairness, are erroneous; and where it is apparent from the record that instructions probably resulted in a miscarriage of justice, the same constitute reversible error.

### 4. Same — Reversal of Cause.

Record examined, judgment of the trial court reversed, and the cause remanded for a new trial.

Error from District Court, Jefferson County; Cham Jones, Judge.

Action by J. Crouch & Son against H. L. Huber and others on promissory notes. Judgment for defendants, and plaintiffs bring error. Reversed and remanded, with directions.

H. A. Ledbetter, for plaintiffs in error.

Bridges & Vertrees and E. B. Anderson, for defendants in error.

JOHNSON, J. This is an appeal from the district court of Jefferson county; Hon. Cham Jones, Judge.

The record discloses that J. Crouch & Son, who were plaintiffs below, filed their petition on December 7, 1917, against H. L. Huber, D. A. Cathey, J. A. Pealor, I. K. Anderson, T. W. Lennann, F. W. Ewing, J. J. Stewart, and A. R. Barber, seeking to recover on three promissory notes dated March 31, 1911, and asking for judgment in the sum of $1,800, with interest at 6 per cent. from March 31, 1911, and $180 as attorney's fees.

Thereafter, on December 24, 1917, the defendants below, who are defendants in error here, filed their answer, admitting the execution of the notes sued upon, and for defense thereto alleged, in substance, that the notes were void for the reason that the execution of the said notes was secured from all the defendants except Huber by fraud, in this, that plaintiffs, through their agent, induced the defendant Huber to persuade all the other defendants to execute said notes with the agreement and understanding that the plaintiffs were to furnish to all of the defendants, as equal owners, a certain horse, and that each and all of the defendants were to be bound on said notes for the payment thereof equally, and that neither nor

any of said defendants were to have the advantage over any other of said defendants, and that all of said defendants were to pay on said notes their proportionate part, and were to be equal owners of the horse and the profit derived therefrom, if any; that, at the time plaintiffs entered into the said contract with the defendant Huber, they contracted and agreed with Huber that if he could secure the other defendants to execute their joint note for the purchase price of the horse, then and in that event plaintiffs contracted and agreed that they would receipt him for his proportionate part of said notes without requiring him to pay his part, all of which was kept from the other defendants by the said Huber and these plaintiffs, and at the time they signed said note they did not know that Huber was not to pay his part of said notes, and that the plaintiffs had given to the said Huber his part that was due upon said notes, and had credited the amount that was due from said Huber on said notes without the said Huber paying the said plaintiffs any sum, and said credit so made was the sole and only consideration; that Huber was to induce and persuade the other defendants to execute and deliver their notes—all of which was a fraud perpetrated by the plaintiffs, which fraud, as alleged in the answer, vitiated the notes sued upon and rendered the same null and void.

And thereafter, to wit, on February 12, 1918, these plaintiffs in error filed their reply, which is in form a general denial, and which was duly verified. This constituted the pleadings.

The cause was tried to the court and jury, and resulted in a general verdict and judgment in favor of the defendants.

Plaintiffs' assignments of error are argued in the brief of counsel as follows:

"Where several persons for the purpose of buying a horse mutually agree to pay a certain price for him, a secret agreement between the vendor and one of them whereby he receives his share in the horse for nothing for securing the others to join him in the purchase, is such a fraud as will entitle defendants to defeat recovery on the notes evidencing their promise to pay the purchase money, but where several persons for the purpose of buying a horse mutually agree to pay a certain price for him, a secret agreement between the vendor and one of them whereby he receives his share in the horse for nothing for securing the others to join with him in the purchase, such fraud may be waived by the failure of the defendants to make a timely tender back of the horse after the discovery of the fraud."

At the commencement of the trial the plaintiffs moved for judgment on the pleadings, which was overruled and exceptions saved. The plaintiffs objected to the introduction of testimony on the part of defendants, for the reason: "That the answer seeking to set up fraud is insufficient in law, for the reason that in the answer no tender of the property which is involved in this controversy, that is, the stallion, has ever been made to plaintiffs, either by word of mouth or by the answer on file in this case."

Whereupon the following proceedings were had:

"Mr. Vertrees: Comes now the defendants—

"Mr. Ledbetter: We object to him dictating anything into the record.

"Mr. Vertrees: Comes now the defendants in the above entitled action and tenders back to the plaintiffs in this case the stallion known as Prince 53093, and the defendants state that they are willing, ready, and able to deliver said stallion to the plaintiffs at any time they may desire to take possession of it.

"Mr. Ledbetter: Do you make that as an amendment to your answer on file herein?

"Mr. Vertrees: Yes, sir; as a tender and an amendment too.

"Mr. Ledbetter: Plaintiffs object to it because it is made after the case has gone to trial and comes too late.

"By the Court: The objection is overruled as to the introduction of the testimony, and as to the offer to amend I guess he has a right to amend and make the tender, but what effect that would have can be controlled in the court's instructions to the jury. I will permit him to make the amendment.

"Mr. Ledbetter: Plaintiffs except."

Concerning their proposition counsel for plaintiffs say in their brief:

"Now, in the case at bar the notes sued upon were dated in 1911, and were due December 15, 1912, December 15, 1913, and December 15, 1914, and from the testimony of Mr. Huber, Mr. Cathey, and Mr. Pealor, it is shown that they had learned of the fact that Hill, the agent of the plaintiffs in error, had agreed to give Mr. Huber credit to the extent of $200 for his services in working up the sale, and that these three persons had known of this fact for approximately three years prior to the institution of this suit. The testimony of all three of these witnesses also shows that the defendants kept the horse, and at the time of the trial of the case had the horse in their possession. The testimony shows, however, that on the day of the trial that the defendants tendered the horse back, which tender was objected to for the reason that it was too late. Now, admitting this testimony to be true, it constituted no defense to the notes sued upon; the defendants having admitted the execution of the notes, it became and was the duty of the trial court to sustain our demurrer to the evidence at the close of the testimony on the part of the defendants."

In answer to this proposition of the plaintiffs, counsel for defendants say in their brief as follows:

"The proposition on which the defendants in error stand is that, where several persons for the purpose of buying a horse mutually agree to pay a certain price for him, a secret agreement between the vendor and one of the vendees whereby such vendee receives his share in the horse for nothing for securing the others to join him in the purchase, is such a fraud as vitiates from the beginning the notes executed as evidence of the purchase price.

"This court has passed on this question a number of times, in cases wherein suit was brought on notes given for the purchase price of stallions, involving the same state of facts as in the present case. The latest expression of the court on such a case we believe, is the case of Le Roy v. Meadows. [83 Okla. 45], 200 Pac. 858, decided September 13, 1921, not yet officially reported. In that case, the defendants set up in their answer that the notes were procured by fraud, and detailed a state of facts exactly similar to that in the present case. In the opinion, the court said: 'It is unnecessary to set out the evidence, but it is sufficient to say that there was enough evidence to justify submitting this question to the jury. That such acts and conduct upon the part of Holbert and Michael would be a fraud upon the other defendants is supported by the principle announced in the case of Gilpin v. Netograph Machine Co., 25 Okla. 408. 108 Pac. 382, 29 L. R. A. (N. S.) 477.'"

They cite in support of their proposition the decisions of this court in Gast v. King et al., 27 Okla. 554, 112 Pac. 997; Prescott v. Brown, 30 Okla. 428, 120 Pac. 991; Jefress v. Phillips, 31 Okla. 202, 120 Pac. 916; Noble v. Fox, 35 Okla. 70, 128 Pac. 102; Byers v. Brisley, 81 Okla. 215, 198 Pac. 90; after which counsel conclude their argument as follows:

"But it should not be overlooked in the case at bar that, had tender been necessary, one was actually made at the time of trial. Our contention in this case is that no tender was necessary, as the contract was void from the beginning for fraud; but had one been necessary, this would have been sufficient. Where one wishes to rescind a contract which was valid at the beginning, but in which some cause for rescission has arisen, there is no dispute that a tender back of whatever of value has been received by

the rescinding party must be made within a reasonable time. This is the case where the injured party seeks to recover that which he has parted with, or brings an equitable action for rescission. But even in cases where there was a valid contract in the beginning, if the injured party does not bring an action to rescind or recover back the consideration paid by him, but awaits an action by the wrongdoer and sets up his grounds for rescission on a defense, it is sufficient if he makes a tender back in his pleadings. But in the present case there was no valid contract at the beginning, and no tender whatever was necessary, as the court will afford no relief whatever to a party whose actions were fraudulent from the beginning. Another strong reason why no tender is necessary in this case is that the stallion was practically valueless for the purpose for which he was bought, and the testimony shows that his care cost more than the benefit derived from him. For these reasons, we submit that the proceedings of the trial court were without error, and the judgment appealed from should therefore be affirmed."

We cannot agree with the contention made by counsel for the defendants that no tender was necessary in the instant case. And the authorities cited by counsel, supra, do not support such contention, but do support the converse rule. The case of Byers v. Brisley, 81 Okla. 215, 198 Pac. 90, cited by counsel, stated the rule in syl. 1 thereof as follows:

"A person induced by false and fraudulent representations to purchase or exchange for property has four remedies. He may, first, upon discovery of the fraud, rescind the contract absolutely and sue in an action at law, and recover the consideration parted with upon the fraudulent contract, and in such case he must restore, or offer to restore, to the parties sued whatever he has received by virtue of the contract; or, second, he may bring an action in equity to rescind the contract, and in such a case it is sufficient for him to restore, or make offer in his petition to restore, everything of value which he has received under the contract; or, third, he may affirm the contract, retain that which he has received, and bring an action at law to recover the damages sustained by reason of his reliance upon the fraudulent representations; or, fourth, he may, in an action against him to recover the purchase price or to enforce a security given therefor, set up the damages sustained by reason of the fraud, as a defense or by way of counterclaim."

And cites in support thereof, Howe et al. v. Martin et al., 23 Okla. 561, 102 Pac. 128, which has been followed by this court in Burke v. Smith, 57 Okla. 196, 157 Pac. 51; Werline v. Aldred, 57 Okla. 391, 157 Pac. 305; and Hooker v. Wilson, 69 Oklahoma, 169 Pac. 1097.

In the instant case the defendants did not bring themselves within the first provision of the rule on the discovery of the alleged fraud by bringing an action at law to recover the consideration parted with upon the fraudulent contract, evidently for the good reason that they had paid no consideration. They did not bring themselves within the second provision of the rule by bringing an action in equity to rescind the contract and offer to or restore everything of value which they had received under the contract; nor did they bring themselves within the third provision of the rule by affirming the contract and retaining that which they had received, and bringing action at law to recover the damages sustained by reason of their reliance upon the fraudulent representations. Now, the question is, Did they bring themselves within the fourth provision of the rule, which provides that in an action against them to recover the purchase price they may set up in their answer, by way of a counterclaim, the damages sustained by them by reason of the fraud, as a defense? We think not; such was not the issue by the pleadings or proof; the case was not so treated by the court in the court's instructions to the jury. The law requires that, while legal and equitable rights may be pleaded in the same action, the pleadings should be framed upon some definite theory and should clearly show the nature of the action intended and the relief sought. Herbert v. Wagg, 27 Okla. 674, 117 Pac. 209.

The only defense which the court attempted to submit to the jury was that of fraud, the defense pleaded by the defendants. And the sixth and seventh paragraphs of the court's instructions to the jury constitute all the instructions that were given to the jury upon that question, and are as follows:

"6. Gentlemen of the jury, in this case you are instructed that should you find, by a preponderance of the evidence, that, at the time this contract was entered into and the sale of the horse made, for which the notes sued upon were given, the defendant, H. L. Huber, was promised and subsequently given credit for the sum of $200, same being a part of the purchase price of said horse, as understood and agreed upon by the other defendants herein, and that said agreement by the agent of plaintiff, Hill, and the defendant, Huber, was secret and not made known to these defendants at the time of the execution of the agreement and the notes sued upon, that in that event the plaintiff would not be entitled to recover in this case, and your verdict should be for the defendants. 'Excepted to by plaintiffs and exception allowed. Cham Jones, Judge.'

"7. On the other hand, gentlemen of the jury, should you fail to find by a preponderance of the evidence that the defendant, Huber, entered into any such contract as alleged by the defedants whereby he received a credit for $200; or should you find from the evidence that such contract was entered into, but that the other defendants herein were notified of such contract or agreement between the defendant, Huber, and Hill, the agent of the plaintiff, before the execution of the note sued upon, then your verdict should be for the plaintiff in the sum sued for."

These instructions were erroneous, and were each tantamount to an instruction to find generally for the defendants. No. 6, because the facts stated by the court necessary for a finding for the defendants were not disputed. The testimony showed clearly that the defendant Huber was promised and subsequently given credit for the sum of $200 as a part of the purchase price of said horse, and this arrangement or agreement between Hill, the agent, and the defendant Huber was shown without dispute to have been secret at the time of the execution of the agreement and the notes sued upon. And No. 7, because there was no testimony tending to show that the other defendants were notified of such contract or agreement between the defendant Huber and the agent, Hill, before the execution of the note sued upon. All the testimony on that question showed conclusively that none of them ever knew of this secret agreement until something like two years after the making of the contract and the execution of the notes. And the case was not ried upon the theory submitted to the jury in these instructions.

As we have seen, the plaintiffs' suit was to recover upon three promissory notes. The defendants promptly answered, admitting the execution of the notes, and set up in their answer that the notes were procured through the fraud and deceit of the plaintiffs. The plaintiffs replied, denying this defense. The plaintiffs' testimony tended to establish their defense, as hereinbefore stated. The court gave the instructions above set out.

The testimony conclusively showed that the defendants made default in the payment of the notes and retained the horse up to the day of trial, which was seven years, seven months and 26 days from the date of the delivery of the horse, without ever having notified the plaintiffs of the defendants' intention of rescinding the contract, and without ever having tendered to the plaintiffs the horse. The testimony tended to show that the defendants discovered the fraud

about two years after the execution of the notes and contract, and that it was about three years thereafter before the plaintiffs filed their suit. The plaintiffs moved for an instructed verdict in their favor, also requested instructions, the effect of which was to submit to the jury the questions of waiver by the defendants after knowledge of the fraud, by their failure to notify the plaintiffs of their intention to rescind, and failure to restore to the plaintiffs, or offer to do so, the horse in question. Which instructions were refused by the court, and the court did not submit such questions to the jury by its general charge.

This, we think, was highly prejudicial to the rights of the plaintiffs, and was, therefore, reversible error.

Section 986, Rev. Laws of 1910, provides that:

"Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"First. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and,

"Second. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so."

In 18 Ency. Pleading & Practice, 829, we find the following:

"In suits for the rescission and cancellation of contracts the court applies the familiar maxim of equity, of almost universal application, that he who seeks equity must do equity. The plaintiff will not be permitted to repudiate his contract and still retain the benefits which he has derived from it, and his desire and willingness to restore what he has received must appear in the bill or complaint; otherwise he will have no standing in a court of equity."

Such has been the holding of this court in numerous cases. Moore et al. v. Kelly, 57 Okla. 348, 157 Pac. 81. Also by other courts, see Brown v. Guarantee Trust & Safe Deposit Co., 128 U. S. 403, 32 L. Ed. 468; Thayer v. Star Mining Co., 105 Ill. 540; Cughan v. Larson, 13 N. D. 373, 100 N. W. 1088; Kansas Lumber Co. v. Horrigan, 36 Kan. 387, 13 Pac. 564; Barber Medicine Co. v. Bradley, 48 Okla. 82, 150 Pac. 127; Brown v. Gordon-Tiger Mining & Reduction Co. (Colo.) 97 Pac. 1042; Black on Rescission & Cancellation, secs. 596-599.

As we view the record, it is clear to us that this case was not properly tried in the court below. The issues were not properly joined by the pleadings, nor were the issues arising upon evidence properly submitted to the jury. And, it is our view that the judgment must be reversed and the cause remanded for a new trial, and that the pleadings should be recast.

It is admitted by counsel for plaintiffs in his brief that the defendants' answer, alleging fraud in the procurement of the note sued upon, alleged such acts of fraud as would vitiate the notes and render the same null and void, unless, as he contended, such fraud was waived by the acts of the defendants in failing within a reasonable time to tender back the horse and demand a rescission of the contract of purchase.

As we have seen, under the authorities, that is not the sole remedy that a defrauded party has, but, as we have pointed out, he has four different remedies in such circumstances, and is not limited to the one of rescission. But, on the contrary, he may wait until an action is brought against him to recover, in this instance the purchase price, and by way of answer may set up the damages sustained by reason of the fraud by way of counterclaim. This the defendants failed to do, and the evidence in this case being sufficient to take that question to the jury, the proper practice would have been to have amended the pleadings to conform to the proof, and the trial court should have submitted the issues under the pleadings as amended to the jury. This was not done, and we think on account of such failure the same probably resulted in a miscarriage of justice.

For the reason stated, the judgment of the trial court is reversed, and the cause remanded for a new trial, with directions to further proceed in accordance with the views herein expressed.

McNEILL, MILLER, KENNAMER, and NICHOLSON, JJ., concur.